KUNDEL *v.* PORTZ.

1. PRINCIPAL AND AGENT—FRAUD—RESCISSION.

In action by buyers of grocery and meat market stock and fixtures against seller, her stepfather, and agent to rescind contract of sale on ground of fraud, where buyers abandoned claim of fraud and sought recovery solely under the common counts for money paid under the contract on theory of mutual rescission, there could be no recovery against defendant agent.

2. SALES—RESCISSION—TENDER—ACCEPTANCE—SELLER'S ALTERNATIVES.

Seller of grocery and meat market stock and fixtures was not obliged to accept buyer's tender on rescission but could have refused it and held buyer liable on promissory notes for balance of purchase price, waited until buyer defaulted and taken possession of the property under the title-retaining contract, or could have notified buyers of acceptance and holding of property subject to buyers' order.

3. CONTRACTS—RESCISSION BY MUTUAL CONSENT—EVIDENCE.

The rescission of a contract by mutual consent does not require a formal agreement or release, but may result from any act or any course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated or terminated, or from the acquiescence of one party in its explicit repudiation by the other.

Recovery against agent in action to rescind contract made by agent, see 2 Restatement, Agency, § 320, illustration 1.

Rescission of contracts, see 2 Restatement, Contracts, §§ 406–409.

4. SALES—RESCISSION—RETURN OF PARTIAL PAYMENTS.

Where there is a mutual rescission of an executory contract of sale under which the buyer has made part payments, the buyer is entitled to the return of the payments made, in the absence of any express or implied agreement to the contrary.

5. SAME—RESCISSION—ACCEPTANCE OF TENDERED STOCK AND FIXTURES—RETURN OF PURCHASE PRICE.

The taking by seller's stepfather of immediate possession of grocery and meat market stock and fixtures of which buyer tendered return accompanied by demand for moneys received by seller constituted an acceptance of the tender according to the terms thereof and effected a failure of consideration for the purchase price paid by the buyers and a mutual rescission of the contract of sale entitling buyers to recover amount paid under the contract.

6. APPEAL AND ERROR—FINDINGS OF FACT—GREAT WEIGHT OF EVIDENCE.

Supreme Court is not disposed to disturb trial court's findings of fact based on conflicting testimony unless against the great weight of the evidence.

7. SAME—CREDIBILITY OF WITNESSES—NONJURY CASE.

In action tried before court without a jury, the trial court is the trier of the facts and in seeing and hearing the witnesses is a more competent judge of their credibility than is the Supreme Court on appeal.

8. CONTRACTS—RESCISSION—RETURN OF WHAT HAS BEEN RECEIVED.

Rescission, whether legal or equitable, is governed by equitable principles, one of which is that an essential prerequisite to the receipt of such relief is the return of what has been received, or its equivalent, by him who seeks the remedy.

9. SALES—RESCISSION—PAYMENTS—REPAIRS—DECREASE OF STOCK.

In buyers' action under rescinded contract for sale of grocery and meat market stock and fixtures for which they had paid $1,329.38 and expended $210 in necessary repairs to ice machine and awning but decreased stock $750 from what they received when they took charge of the business, plaintiffs would be entitled to $789.38.

10. APPEAL AND ERROR—NONJURY CASE—CANCELLATION OF PURCHASE MONEY NOTES—MERGER OF LAW AND EQUITY.

On appeal from judgment in nonjury action on law side of court to recover sums paid under contract for sale of grocery and meat market stock and fixtures, Supreme Court is unable to cancel notes given by buyers for unpaid balance as such

remedy is equitable in nature, and law and equity have not been merged to the extent that such relief may be granted in a legal action.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted January 8, 1942. (Docket No. 67, Calendar No. 41,836.) Decided March 17, 1942. Rehearing denied April 15, 1942.

Action by Thomas Kundel and wife against Edward Portz, A. J. Primm, and Lavergne Hill for fraud and deceit in the sale of store fixtures and merchandise, to recover money paid on said sale, and for other relief. Judgment for defendants. Plaintiffs appeal. Reversed and remanded for entry of judgment for plaintiffs.

*Isaac M. Smullin,* for plaintiffs.

*Casper C. Cutler* and *Louis A. Gottlieb* (*Chas. F. Hemans* and *Harold J. Harris,* of counsel on application for rehearing), for defendants.

STARR, J. Plaintiffs appeal from judgment of no cause of action, entered January 6, 1941.

On March 4, 1938, plaintiffs purchased from defendant Hill, stepdaughter of defendant Portz, the grocery store and meat market, including merchandise, fixtures, and lease, located at 7719 Harper avenue, Detroit, at a price of $2,500. Plaintiffs paid $1,000 in cash and executed promissory notes for the balance, which was to be paid in monthly instalments of $75. Plaintiffs took possession and began operating the store.

On June 18, 1938, plaintiffs filed bill of complaint charging defendants with fraud and misrepresentations in connection with the sale. On July 5, 1938, plaintiffs' attorney wrote defendant

Portz the following letter, which Portz admits receiving:

"In re: Thomas Kundel and Mary Kundel, his wife, v. Edward Portz, A. J. Primm, and Lavergne Hill

*"Dear Sir:*

"On June 18, 1938, suit was instituted against you for the rescission of a certain agreement made between you and Mr. Kundel concerning the purchase of a meat market store located at 7719 Harper avenue, Detroit, Michigan. There is an order to show cause now pending in this case, and your attorney asked for an adjournment which we granted to him.

"Mr. Kundel has in the meantime, been compelled to move from the premises by your landlord, and you are, therefore, notified that the fixtures and the merchandise sold by you to Mr. Kundel, are now in the premises at 7719 Harper avenue, of which you can take immediate possession.

"Mr. Kundel is surrendering to you, the possession of the fixtures and stock purchased from you because he feels he has been defrauded by you in many respects, and particularly for the reason that he purchased the store upon your assurance that he will remain in the premises under a lease, and since he has been compelled to move from the premises, he has no use for the merchandise or fixtures purchased from you.

"You are, therefore, requested to pay back to Mr. Kundel, all the moneys received by you from him and to reimburse him for the damages suffered as a result of this transaction.

"Sincerely yours,
"ISAAC M. SMULLIN
"Attorney for Mr. Kundel

"ims/r
"copy to Louis Gottlieb, attorney."

A few days later plaintiffs, at the request of defendant Portz, delivered the store keys to Portz's agent. Portz took immediate possession of the store, merchandise, and fixtures and later, without notifying plaintiffs, sold the fixtures for $2,000.

On July 11, 1938, defendants filed answer generally denying plaintiffs' charges. At the pretrial hearing the case was transferred to the law side of the court. On November 4, 1939, plaintiffs filed declaration, the first count charging fraud and misrepresentations and claiming judgment against defendant Portz; the second count charging fraud and misrepresentation and claiming judgment against defendants Portz and Hill; the third count being the common counts and claiming judgment against all three defendants.

In their bill of complaint plaintiffs alleged that "they are foreigners by birth and are almost illiterate in the English language and without business experience," that defendant Portz asked them to sign a certain instrument which they "believed to be a bill of sale, but which instrument was in effect only an agreement to sell," and that "they signed those instruments without being able to read the same * * * relying upon the assurance of defendants that the instruments contained all the terms and the conditions agreed upon."

In their declaration plaintiffs alleged that they negotiated with defendant Portz for the purchase of the store and were assured that Portz was the owner; that after taking possession of the store they discovered that the agreement of sale and purchase was signed by defendant Hill, stepdaughter of defendant Portz; that defendants Portz and·Hill conspired together to deceive and defraud plaintiffs; that at the time of the sale in March, 1938, defendant Portz falsely represented that the lease of the

premises would not expire for nine months, and that he had an arrangement with the lessor to remain in the premises after its expiration; and that in reliance upon such representations plaintiffs purchased the merchandise and fixtures. Plaintiffs further alleged that they later discovered that Portz did not have such lease, but was renting the store on a month-to-month basis; that on June 10, 1938, the owner of the store building served plaintiffs with notice terminating their tenancy and requiring them to vacate; that after receiving such notice they tendered the merchandise and fixtures back to defendant Portz and requested repayment of all moneys they had paid Portz; that Portz accepted such tender, took possession of the store, and instructed plaintiffs to turn the keys over to his (Portz's) agent; that during the time they were in possession of the store plaintiffs had increased the value of the stock of merchandise and the fixtures in the amount of $1,000. Plaintiffs made no charge in their declaration against defendant Primm, but in their bill of complaint they charged him, as the agent of Portz, with fraud and misrepresentation in connection with the sale. Defendants filed answer denying all allegations as to fraud and misrepresentations, and the matter came on for hearing before the court without jury.

At the conclusion of the trial the lower court held that plaintiffs had failed to establish the alleged fraud and misrepresentation and on December 21, 1939, entered judgment of no cause of action.

On January 8, 1940, plaintiffs filed motion to set aside such judgment and for entry of judgment in their favor for the amount they had paid on the purchase price of the store. Such motion was based upon the claim that the tender of the merchandise and fixtures back to defendants and the acceptance thereof constituted a mutual rescission of the agree-

ment of sale and purchase, and that plaintiffs were entitled, under the common counts of their declaration, to recover the amount paid on the purchase price. The trial court's opinion, filed March 18, 1940, stated, in part:

"At the hearing the plaintiff claimed that there was actual fraud and misrepresentation upon the part of the defendants, and claim damages sustained as a result, and, likewise, claim that defendants having accepted back the tender to them of the merchandise and fixtures consented to a rescission and are bound as a matter of law to a return of the moneys paid by them and received by the defendants.

"At the conclusion of the hearing the court found that plaintiffs had failed to establish the fraud and misrepresentation as alleged and directed entry of a judgment of 'no cause of action' in favor of the defendants.

"The matter is now before the court on plaintiffs' motion to set aside judgment of 'no cause of action' and for judgment in favor of the plaintiffs based upon the second count in the declaration, insisting that the plaintiffs are entitled to recover for the money paid to the defendants for merchandise and fixtures which was tendered back to the defendant and accepted by him. * * *

"As stated, in this motion it is plaintiffs' claim that accepting the court's findings and abandoning their claim for such recovery, the plaintiffs are, nevertheless, entitled to judgment on the common counts for money received and paid to the defendants for the merchandise and fixtures which were tendered back to them and which were accepted. * * *

"In the case at bar there is no dispute that the defendant accepted the plaintiffs' tender of the merchandise and fixtures purchased in accordance with the terms of the letter explaining the purpose of

the tender back, and, under the circumstances, are responsible to the plaintiffs for the purchase price received."

On the same date judgment was entered, providing, in part, as follows:

"It is ordered and adjudged by the court now here that said judgment of no cause of action in favor of the defendants (entered December 21, 1939) be and it hereby is set aside.

"It is further ordered and adjudged that the plaintiffs do recover against the defendants their damages hereby assessed in the sum of $1,329.38 together with their costs and charges by them about their suit in this behalf expended, to be taxed, and that plaintiffs have execution therefor.

"It is further ordered that all the promissory notes given as part of the purchase price in this matter be cancelled and delivered to the plaintiffs. * * *

"When a contract of sale has been mutually rescinded or abandoned the parties are entitled to be placed in *statu quo*; that is, where the return of the property is effected with the vendor's consent, he is responsible to the vendee for the amount received on the purchase price.

"By accepting the property involved in the sale the defendants ended all contractual rights between the parties.

"The plaintiffs having paid to the defendants the sum of $1,329.38 are entitled to a judgment in that sum. * * *

"Plaintiffs are likewise entitled to a cancellation and the return of all the promissory notes given as a part of the purchase price and delivered to the plaintiffs."

On April 19, 1940, defendants Portz and Hill filed motion for new trial and to set aside the judgment for plaintiffs, entered March 18, 1940, on the ground

(1) that the judgment was against the great weight of the evidence; (2) that plaintiffs' theory of mutual rescission of the agreement was not raised at the trial, and that defendants were thereby deprived of the opportunity of presenting evidence in defense of such theory; (3) that defendants, by accepting the return of the merchandise and fixtures, did not consent to a rescission; and (4) that under their title-retaining contract they were entitled to accept the property back without consenting to rescission. On June 18, 1940, the trial court entered an order granting defendants a new trial and setting aside the judgment for plaintiffs, entered March 18, 1940. Such order provided, in part, that additional testimony should be taken on the issue of mutual rescission only.

At the new trial on January 6, 1941, plaintiff Thomas Kundel testified there was about twice as much merchandise in the store when he returned it as there was when he took it over, and that he made repairs to the ammonia (ice) machine and awning in the amount of $210. Plaintiff Mary Kundel testified that, when the store was turned back to defendant Portz, "there were three times more or four times more merchandise than it was at the time we took over the store." Plaintiffs' daughter testified that, when the store was turned back to defendant Portz, it contained more merchandise than when plaintiffs purchased it. One witness called by defendant stated that there was approximately $800 worth of merchandise in the store when plaintiffs took possession and only about $50 worth when defendant Portz accepted it back. An employee of defendants Portz and Hill testified that, when the store was turned back, "the merchandise which was in the store was not worth more than $35." Defendant Portz testified, in part:

"I received a call from Mr. Kundel in July or in June.

"*Q.* What did he say to you?

"*A.* Told me to come and get the keys and they were getting up and quitting the store and walking out.

"*Q.* What did he say would happen if you didn't get the keys?

"*A.* He said he would walk out.      *      *      *

"The call which I received from Kundel was about July 1st or 2d. At the time I turned over the store to Kundel there was from $800 to $900 worth of merchandise and when I took it back it was not over $35 worth. The fixtures remained in the store until I sold them. I took the merchandise out from this store to my own store on Fenkell avenue, and I sold the fixtures about a month later.

"*The Court:* When did you sell the fixtures?

"*A.* I think it would probably be about a month later.      *      *      *

"*The Court:* But you treated the fixtures as your own?

"*A.* Yes, sir.

"*The Court:* And sold them, as belonging to your daughter (defendant Hill)?

"*A.* Yes, sir.      *      *      *

"*The Court:* And did you notify them you were going to cancel all the notes?

"*A.* No. I don't think I did that.

"*The Court:* What did you intend to do with the notes?

"*A.* The notes had—I would just simply let them drop, tear them up.

"*The Court:* Then you took the fixtures over and the goods that were left and you intended to tear the notes up and cancel them?

"*A.* Yes, sir.

"I sold the fixtures after I took possession of the same and I received $2,000 for them."

In its opinion, filed January 6, 1941, the trial court stated, in part:

"*The Court:*  This is perhaps the third time this set of facts has been before the court, on the original hearing, on the motion to set aside the judgment, and on this rehearing. I am presented here with some new evidence pertaining to the alleged rescission and value of the goods.  \*  \*  \*

"I am presented here with some rather shaky evidence. I must conclude from the hearing of this proof today that plaintiff did not replenish his stock of goods three or four times its original value at the time that he surrendered possession.  \*  \*  \* I do not believe the testimony of Mrs. Kundel or the plaintiff himself to support their claim that the stock of goods had increased from $800 to three times that value, or to accept the wife's testimony, four times that value; and that at the time that the stock was surrendered that there was somewhere between $2,400 and $3,200 worth of merchandise on the shelves. That testimony does not come to the court in good faith.  \*  \*  \*

"I am safer in accepting the testimony of Mr. Miller that the stock inventoried at around $50, and that was all that was left on the shelves after the plaintiff sold out as much of it as he could to save himself from loss subsequent to the time he made up his mind to quit the business as a poor business venture.

"There was no fraud, as I have already held, in the original sale,  \*  \*  \*  the evidence here fails to establish under the common counts a mutual rescission. There is no mutuality in this unless it can be said that the mere taking of the goods by the defendant establishes that situation.

"The defendant, under his contract, had a right to save as much of the loss as possible. Apparently both parties here suffered a loss.  \*  \*  \*

"The evidence here discloses now that the defendant likewise suffered a loss because of the plain-

tiff's attitude. I am unable to hold that the facts establish a mutual rescission of this contract, and enter a judgment for the defendant, no cause of action, and upon the defendant's statement, cancellation of all obligations under that contract."

Judgment of no cause of action was entered in favor of defendants; and plaintiffs appeal.

Plaintiffs have abandoned their claim of fraud and misrepresentation. Plaintiffs' counsel states in his brief:

"Appellants have abandoned their claim to recover for fraud, and have elected to proceed under the common counts for money received and paid to the defendants and appellees for merchandise and fixtures which were tendered back to them, and which were accepted."

The only question raised in the statements of questions involved is, whether under the testimony there was a mutual rescission entitling plaintiffs to recover from defendants Portz and Hill the amount they had paid on the purchase price. Plaintiffs' having abandoned their claim of fraud and misrepresentation, there could, under their theory of mutual rescission, be no recovery against defendant Primm who acted only as agent for Portz and Hill.

The letter of July 5, 1938 (above quoted), from plaintiffs' attorney to defendant Portz plainly stated the reasons for, and the terms and conditions under which they were, tendering the merchandise and fixtures back to defendant Portz. Defendant Hill, in whose name the sale was made, and defendant Portz were not obliged to accept plaintiffs' tender; they could have refused it and held plaintiffs liable on their promissory notes for the balance of the purchase price, or they could have waited until plaintiffs defaulted in monthly payments and

then recovered possession of the property under the title-retaining contract, or they could have notified plaintiffs that they were accepting and holding the property subject to plaintiffs' order. However, defendants Portz and Hill elected to accept the property back. Their acceptance was subject to the terms and conditions of plaintiffs' tender.

In *Young* v. *Rice,* 234 Mich. 697, 700, in which the question of mutual rescission of a contract of sale and purchase was involved, we said:

"This subject is exhaustively treated in 2 Black on Rescission and Cancellation (2d Ed.), §§ 531, 532:

" 'When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order or sell it for his account, the transaction operates as a complete rescission of the contract of sale. And it appears to be immaterial, in respect to the application of this rule, whether the purchaser assigns any reasons for returning the goods, or what his specified reasons may be, whether a deficiency in quantity or quality, a general dissatisfaction with the property, his inability to pay, or a mere wish to be released from his bargain. For his return of the goods is an offer of rescission, and the acceptance and retention of them by the seller is an acceptance of that offer, and thereupon a rescission is effected, not necessarily for legally sufficient cause, but by the mutual consent of the parties. * * *

" 'Without any explicit agreement for the abrogation of a contract, it may be effectually rescinded by the actions of the parties where they mutually abandon all further performance under it, and treat it as at an end, neither seeking to hold the other to any accountability under it. And the same result follows where one of the parties distinctly and com-

pletely abandons all rights and all obligations under the contract, and the other accepts the situation so created and restores himself, so far as possible, to his former situation.' ''

''A mutual rescission may be inferred from the conduct of the parties clearly evidencing their intention to treat the contract at an end.'' 24 R. C. L. p. 272.

''The rescission of a contract by mutual consent does not require a formal agreement or release, but may result from any act or any course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated or terminated, or from the acquiescence of one party in its explicit repudiation by the other.'' 2 Black on Rescission and Cancellation (2d Ed.), § 528.

In *Holmes* v. *Borowski*, 233 Mich. 407, 411, we quoted with approval 24 R. C. L. p. 277, stating as follows:

'' 'Where there is a mutual rescission of an executory contract of sale under which the buyer has made part payments, the view has been taken that, in the absence of any express or implied agreement to the contrary, the buyer is entitled to the return of the payments made.' ''

See, also, *Fisher* v. *Super Motor Sales Co.*, 247 Mich. 485; *Davis* v. *Strobridge*, 44 Mich. 157.

In the case of *Greder* v. *Stahl*, 22 S. D. 139, 141 (115 N. W. 1129), the court said:

''We are of the opinion the instruction was correct, and that the defendant by his failure to notify the plaintiff that he did not accept the horses, and by retaining them, did in effect consent to the rescission of the contract.

''It is not essential that the defendant in express terms consent to the rescission of the contract, but such consent may be implied from his acts or con-

duct, and where, as in the case at bar, the defendant receives back the property sold and retains the same without objection or notice to the other party that he refused to accept the same, his consent will be presumed, and the law raises an implied agreement on the part of the seller to refund the consideration paid for the property. The learned author on the subject of Sales (24 Am. & Eng. Enc. of Law (2d Ed.), p. 1097) says: 'Consent to rescission may be either express or implied from the language and conduct of the parties.' ''

Plaintiffs' claim of mutual rescission is substantiated by the testimony of defendant Portz, who, when asked what he intended to do with plaintiffs' promissory notes for the monthly instalment payments on the purchase price, said that he intended to tear up the notes and cancel them.

Plaintiffs did not abandon the property, but tendered it back with reservation of claim for the amount paid on the purchase price. By accepting plaintiffs' tender of the merchandise and fixtures, defendants Portz and Hill acquiesced in the terms of such tender, which included plaintiffs' demand for return of the amount paid on the purchase price. As a consequence of defendants' acceptance of plaintiffs' tender, there resulted a failure of consideration for the purchase price paid by plaintiffs.

From a careful examination of the rather confusing record we conclude that the acts and doings of the parties constituted a mutual rescission of their agreement of sale and purchase.

There remains to be computed the sum which plaintiffs are entitled to have returned to them by defendants. The trial court, in its judgment of March 18, 1940, determined that $1,329.38 had been paid defendants on the agreed sale and purchase price. In its opinion filed January 6, 1941, the

trial court determined that the value of the merchandise at the time the premises were surrendered to defendants was only $50, and that when plaintiffs had taken possession there were goods in the store worth $800. Such findings of fact, based on conflicting testimony, this court is not disposed to disturb unless against the great weight of the evidence. The trier of the facts saw and heard the witnesses and is, therefore, a more competent judge of their credibility than we are on appeal.

We thus deem it conclusive that plaintiffs returned $750 less merchandise than they received when they took charge of the business. On the other hand, plaintiffs' testimony is undisputed that they expended $210 in necessary repairs to the ice machine and awning.

Rescission, whether legal or equitable, is governed by equitable principles, one of which is that an essential prerequisite to the receipt of such relief is the return of what has been received, or its equivalent, by him who seeks the remedy.

By deduction of the amount expended on repairs from the amount by which the plaintiffs decreased the inventory, it may be deduced that plaintiffs returned $540 less than they received from defendants. This amount must, therefore, be subtracted from the money paid by plaintiffs on the purchase price, leaving them entitled to the return of $789.38.

In *Holmes* v. *Borowski, supra*, p. 408 (syllabus), this court held that:

"In an action for the amount paid on a contract for the purchase of a restaurant, where the contract was rescinded by mutual consent, plaintiffs' right of action was not defeated because they could not place defendants *in statu quo* by reason of the fact that they had used some of the stock while in possession, but the trial judge properly instructed the

jury to make a deduction of the proper amount, which was not in dispute."

See, also, *Zadel* v. *Simon,* 221 Mich. 180; *Szarkowski* v. *Pfister,* 262 Mich. 226.

It must, of course, be recognized that these figures are only approximations, reached by the court in an effort to arrive at a solution as nearly as possible equitable to all parties.

The testimony indicates some uncertainty as to whether plaintiffs were in default in the payment of one monthly instalment. However, there is testimony from which it can reasonably be inferred that plaintiffs were not in default on July 5, 1938, when the merchandise and fixtures were tendered back.

Since this is an appeal from an action brought on the law side of the court, we are unable to decree cancellation of the notes given by plaintiffs for the balance of the purchase price. Such remedy is equitable in nature. In this State law and equity have not been merged to the extent that such relief may be granted in a legal action.

The judgment is reversed without a new trial, and the case is remanded for entry of judgment for plaintiffs in accordance with this opinion. Plaintiffs shall have costs.

CHANDLER, C. J., and BOYLES, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.