## LASH v. PROKOP.

1. TRIAL—TRANSFER OF CAUSE FROM EQUITY TO LAW SIDE OF COURT —INJUNCTION—DAMAGES.

A party who has sought and obtained injunctive relief and added, as a defendant, a person who was not a party to the contract sought to be rescinded, is not entitled to have the cause transferred to the law side of the court on the ground that, as it then stood, nothing except a money decree was sought (CL 1948, § 611.2).

2. EQUITY—PARTIES—MOTION TO DISMISS—RESCISSION OF CONTRACT.

Motion to dismiss as to mother of party defendant whose contract plaintiffs sought to rescind was properly denied, where the mother had furnished most of the money with which the other defendant had originally purchased the restaurant business involved, first brought the proposed sale to the attention of one of the plaintiffs, personally made misrepresentations to such plaintiff, actively participated in the business and sale and received plaintiffs' down payment in cash.

3. SAME—RESCISSION OF CONTRACT—RESTAURANTS—APPRAISERS— MISREPRESENTATION—EVIDENCE.

Testimony of auctioneer and appraiser who had appraised, bought and sold restaurants for over 20 years was properly received as bearing on the question of misrepresentation and fraud in suit to rescind contract for purchase of restaurant business.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Generally as to transfer of case from equity court to law court, see 19 Am Jur, Equity § 196.

[3] Generally as to expert and opinion evidence, see 20 Am Jur, Evidence § 763 et seq.

[5] 9 Am Jur, Cancellation of Instruments § 47.

[7] 3 Am Jur, Appeal and Error § 830.

[8, 9] 12 Am Jur, Contracts § 431; 46 Am Jur, Sales § 788.

[10] 46 Am Jur, Sales § 666.

4. APPEAL AND ERROR—CHANCERY CASE—RESCISSION OF CONTRACT—
EVIDENCE.

Findings of circuit judge that defendants misrepresented cost
of restaurant business, its fair market value, the daily business
done by them, that a neon sign had been bought and paid for,
and that they had a valid municipal restaurant license *held,*
supported by evidence presented in suit to rescind contract
for purchase of the business.

5. VENDOR AND PURCHASER—RESCISSION—MINIMIZATION OF DAM-
AGES—WAIVER.

Operation by plaintiffs of restaurant business which they had
purchased from a defendant for nearly 2 years after bill to
rescind was filed, in an effort to minimize their damages and
before abandoning the business, did not result in any waiver
of rights by plaintiffs.

6. SAME—RESCISSION—MEASURE OF DAMAGES.

The measure of damages in a suit to rescind contract of pur-
chase of a restaurant business is controlled by the amount
plaintiffs have paid, not the difference between the real value
of the property and value as represented.

7. APPEAL AND ERROR—THEORY OF CASE.

Parties will be held to theory upon which cause was tried with-
out objection in the trial court, when case is on review.

8. VENDOR AND PURCHASER—CONSENT—ABANDONMENT OF PROPERTY.

Vendors of restaurant business, in effect, consented to a rescis-
sion of the contract when they received back the property
which plaintiffs abandoned by leaving it in the building leased
to defendant son and by removal and sale of the equipment.

9. SALES—RESCISSION—UNCONDITIONAL ACCEPTANCE OF REDELIVERY.

An unconditional acceptance by the seller of redelivery of goods
tendered back by the buyer effects a rescission of the sale trans-
action by the mutual consent of the parties irrespective of any
or no reason assigned by the buyer for doing so.

10. VENDOR AND PURCHASER—RESCISSION—MEASURE OF RECOVERY—
PAYMENT—IMPOUNDED FUNDS—RENT.

Plaintiff purchasers of restaurant property upon rescission be-
came entitled to a return of their down payment in cash, can-
cellation of that part of a promissory note representing a
portion of the down payment and a return of amount of month-
ly payments on the contract impounded during pendency of
the case in court, plaintiffs being liable for rent for period
they occupied the premises.

11. COSTS—APPEAL—EACH PARTY PREVAILING ONLY IN PART.
    No costs on appeal are allowed in suit to rescind contract for
        purchase of restaurant business, where each party has prevailed
        only in part.

Appeal from Wayne; Murphy (George B.), J. Submitted June 8, 1951. (Docket No. 27, Calendar No. 45,044.) Decided October 1, 1951. Rehearing denied December 3, 1951.

Bill by Pauline Lash and another against Chester Prokop and another to rescind contract, for accounting and other relief. Decree for plaintiffs. Defendants appeal. Modified and remanded for enforcement.

*Riseman, Lemke & Piotrowski,* for plaintiffs.

*William J. Eggenberger,* for defendants.

BOYLES, J. Plaintiffs have invoked the aid of the chancery court to set aside an executory contract for their purchase of a restaurant in Hamtramck, cancel their obligations to pay, enjoin the defendants from enforcing a promissory note for $450 given partly in part payment and partly for rent, for an "accounting" of plaintiffs' damages, and a lien on the property therefor, on the ground that the defendants had been guilty of misrepresentation and fraud inducing plaintiffs to enter into the purchase. After hearing, the trial court concluded that the defendants had induced plaintiffs to enter into the contract by misrepresentations and fraud, entered a decree for cancellation of the contract, enjoined collection of the note, allowed plaintiffs $1,600 for their "damages," and cancelled the note. The defendants take general appeal; and plaintiffs cross-appeal claiming that the "judgment" in their favor should have been for a much larger sum.

As briefly as possible, the facts are as follows:

On January 7, 1947, defendant Chester Prokop purchased the restaurant from the then owner, procured an assignment of the lessee's interest in the lease, made some improvements and repairs and installed some further equipment. He opened for business on February 4th, and on February 16th, being dissatisfied with the business, listed it for sale with a broker. During that interim he did not obtain a restaurant license until February 11th, and then only on a temporary basis on condition that he remove the wallpaper and paint the walls. On February 26th plaintiffs entered into the agreement to purchase which is here involved, and went into possession. On March 15th the restaurant was closed by the municipal authorities, the restaurant license having been refused or revoked for failure to make the improvements. On the same day, defendant Chester Prokop sued plaintiffs to collect the promissory note. On March 19th plaintiffs filed their bill of complaint against Chester Prokop for cancellation, claiming rescission on the ground of misrepresentation and fraud, followed on May 9th by filing an amended bill adding Mary Prokop as a defendant and setting up additional grounds for relief. Plaintiffs sought to restrain enforcement of the promissory note, and "that the agreement heretofore entered into between the parties be set aside and declared null and void and that an accounting be made of the damages sustained by the plaintiffs by reason of the fraudulent representations of the defendants and that such amount be made a lien upon the restaurant in question, such lien to be foreclosed in accordance with law."

In the meantime (on April 17th), the court had entered an order requiring plaintiffs to deposit $210 per month with the clerk of the court *pendente lite*, $150 per month of which was for rent, ordered the

defendant to comply with the demand of the authorities as a condition to obtaining a restaurant license, and temporarily enjoined the defendant from disposing of or collecting the note. Subsequently, the court properly denied a motion by plaintiffs to transfer the case to the law side of the court,[*] mainly on the ground that plaintiffs had sought and already obtained injunctive relief, and had added as a defendant Mary Prokop (Chester Prokop's mother) who was not a party to the contract of sale.

"Where plaintiff asked for equitable relief by way of cancellation of contract, accounting, and injunction, and received equitable relief by securing and continuing in force temporary injunction, and finally accounting was had, its motion to transfer cause to law side of court on ground that, as case then stood, nothing except money decree was sought, was properly denied." *Moon Brothers, Inc.,* v. *Equipment Finance Corporation* (syllabus), 255 Mich 359.

See, also, *Kundel* v. *Portz,* 301 Mich 195.

After the required wallpaper removal and painting had been done by the defendants, plaintiffs reopened the restaurant, sometime about the middle of April, and operated it during the pending of the litigation until February 5, 1949, making monthly payments to the clerk of the court totalling $1,290 (which is still impounded by the court) in addition to $150 per month for rent. On the above date plaintiffs "abandoned" the restaurant, the property and business, left it in the building on which the defendant Chester Prokop had a lease, and the defendants took possession. Subsequently, the defendants removed the equipment and used it to open another restaurant, which they subsequently sold, without apparent loss as to the value of the property. The instant case was not finally heard by the court until

---

[*] See CL 1948, § 611.2 (Stat Ann § 27.652).—Reporter.

November, 1949, after the above events had taken place.

Appellants claim that the trial court should have dismissed the case as to defendant Mary Prokop. The record shows that Mary Prokop furnished most of the money for the original purchase of the restaurant by her son, first brought the proposed sale to the attention of plaintiff Lash, personally made misrepresentations upon which Lash relied, and actively participated in the business and its sale, and received plaintiffs' down cash payment. The court did not err in refusing to dismiss as to her.

Appellants also argue that the court should have excluded the testimony of one W. Roy Schooler who testified as to the value of the restaurant. The witness was an auctioneer and appraiser; had appraised, bought and sold restaurants for over 20 years, made appraisals for bankruptcy courts and banks, and had taken an inventory of the restaurant in question. His testimony as to the value of the property in 1947 and 1949 was admissible, bearing on the question of misrepresentation and fraud.

The circuit judge found as a matter of fact that the defendants had made material misrepresentations of essential facts which were believed by the plaintiffs and which induced them to make the purchase, and had been guilty of fraud. We are convinced by the record that if we had seen and heard the witnesses we would not have reached a different conclusion. The defendants represented that the restaurant was a gold mine, taking in between $75 and $100 a day, that they had paid $5,500 for it, had paid $550 for a neon sign, that they had a restaurant license, that the trouble with the municipal authorities had been ironed out. Defendants had misrepresented the cost of the business, its fair market value, the daily business done by them, there was no neon sign purchased or paid for, the defend-

ants did not have a valid restaurant license at the time of the sale, they had not complied with the municipal requirements. Plaintiffs were compelled to close the business shortly after taking possession, for lack of a license. In February, 1949, plaintiffs finally elected to close up the business after operating it until that time, pending hearing of the case, in an effort to minimize their damages. Plaintiffs did not waive any rights by so doing.

Plaintiffs cross-appeal claiming that their "measure of damages" should be the difference between the real value of the property and what it would have been if the representations had been true. If that theory was tenable, plaintiffs have mistaken their remedy. Under their amended bill of complaint, the case has been tried and submitted on the theory of rescission, seeking injunctive relief, and not merely damages. In such case the amount of recovery is controlled by the amount plaintiffs have paid.

"In rescission plaintiff may recover back what he has paid, and in affirmance plaintiff may recover difference between value of stock as represented and its real value.

"On review, parties will be held to theory upon which cause was tried without objection in trial court." *Westman* v. *Brumm* (syllabi), 248 Mich 387.

Plaintiffs overlook the fact that the *Westman Case, supra,* and also *Poloms* v. *Peterson,* 249 Mich 306, and *Gloeser* v. *Moore,* 284 Mich 106, also relied on by plaintiffs, were brought for damages claimed to have been suffered through fraud inducing the purchase, not based on rescission. While *Hubert* v. *Joslin.* 285 Mich 337, also relied on by plaintiffs, was a "bill * * * to obtain the amount of damages suffered by plaintiffs because of fraud," the plaintiffs did not rescind, but sought to retain the prop-

erty (land contract) and receive a credit thereon for damages. The opinion states:

"Plaintiffs seek to retain the farm property they acquired and recover damages in equity rather than suing at law."

In the instant case, plaintiffs may recover the amount they paid. The total down payment made by plaintiffs was $4,000. The trial court cancelled the agreement and allowed plaintiffs $1,600, apparently the difference between the *cash* down payment, $3,700, and the value of the business at the time of purchase, and in addition cancelled the promissory note. However, the court should have awarded them $3,700, the full amount of their cash down payment, plus cancellation of $300 of the balance, included in the note. In rescission, the defrauded party may recover back what he has paid. *Westman* v. *Brumm,* *supra,* and other cases cited herein. In effect, the defendants consented to a rescission when they received back the property which the plaintiffs "abandoned" by leaving it in the building of which the defendant Chester was the lessee, whereupon the defendants removed the property and afterward sold it, at no apparent loss from the original value as claimed by them.

In *Kundel* v. *Portz, supra,* under circumstances similar to the facts in the present case, the Court said:

"In *Young* v. *Rice,* 234 Mich 697, 700, in which the question of mutual rescission of a contract of sale and purchase was involved, we said:
" 'This subject is exhaustively treated in 2 Black on Rescission and Cancellation (2d ed), §§ 531, 532:
" ' "When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and

resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order or sell it for his account, the transaction operates as a complete rescission of the contract of sale. And it appears to be immaterial, in respect to the application of this rule, whether the purchaser assigns any reasons for returning the goods, or what his specified reasons may be, whether a deficiency in quantity or quality, a general dissatisfaction with the property, his inability to pay, or a mere wish to be released from his bargain. For his return of the goods is an offer of rescission, and the acceptance and retention of them by the seller is an acceptance of that offer, and thereupon a rescission is effected, not necessarily for legally sufficient cause, but by the mutual consent of the parties." ' "

The decree should require defendants to pay $3,700 (not $1,600) and cancel the note to the extent of $300, thus making the full amount of $4,000, the down payment. The decree of the trial court, as entered, is inconsistent in that (in paragraph 3) it cancels the executory contract of sale, thereby following the theory of rescission and return of the property, yet in the next paragraph awards the plaintiffs only $1,600, which is not the amount paid by plaintiffs, but merely the difference between the cash amount paid and the *value* of the property which the defendants received back. Furthermore, the decree cancels the full amount of the promissory note, $450, whereas only $300 of that amount was part of the down payment, and $150 was for rent which should not be cancelled or returned to the plaintiffs. However, the court properly approved the payment of rent during plaintiffs' period of occupancy, and merely required the return to plaintiffs (by the clerk of the court) of $1,290, the amount impounded for monthly payments on the contract, to abide the out-

come as to whether the contract would be cancelled by the court.

A decree may be entered in this Court, as modified in consonance with this opinion, and remanding the same for enforcement thereof. No costs, each party having prevailed only in part.

REID, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.