## CELLETTI v. TOY.

1. JUDGMENT—REAL PARTY IN INTEREST.

Judgment for plaintiff in nonjury action to recover money paid defendant attorney for services in connection with obtaining a liquor license for plaintiff, his father, since deceased, and his brother would be a bar to action by estate of father, where testimony shows the retainer money was withdrawn from plaintiff's personal savings account and paid by him to defendant pursuant to an agreement entered into between plaintiff and defendant, and that defendant's efforts did not succeed in obtaining a license, plaintiff being the real party in interest (CL 1948, § 612.2).

2. APPEAL AND ERROR—GREAT WEIGHT OF EVIDENCE—ACTION TO RECOVER MONEY PAID ATTORNEY.

Judgment for plaintiff in nonjury action to recover money paid defendant attorney for services in connection with obtaining a liquor license will not be set aside on ground that it was contrary to the great weight of the evidence, where there was a conflict in the testimony as to whether there was an agreement that the money was to be returned in the event that the efforts to obtain the license were unsuccessful and the evidence supported the judgment.

----

REFERENCES FOR POINTS IN HEADNOTES
[2] 3 Am Jur, Appeal and Error § 900.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 2, 1956. (Docket No. 17, Calendar No. 46,849.) Decided December 6, 1956.

Action by Charles M. Celletti against Charles S. Toy for refund of retainer advanced on assurance that liquor license would be obtained. Judgment in Detroit common pleas court and in circuit court for plaintiff. Defendant appeals. Affirmed.

*Orville F. Sherwood,* for plaintiff.

*Charles S. Toy, in propria persona.*

KELLY, J. Plaintiff and appellee was awarded a judgment for $1,000 in the common pleas court. This judgment was affirmed by the Wayne county circuit court, and defendant appeals.

Appellant is an attorney at law, engaged in the practice of that profession in the city of Detroit. Appellee is a merchant and co-owner of the Better Supermarket, a retail establishment in the city of Detroit.

Appellee, his father and brother, were engaged in the business of selling groceries, meats, beer and wine, and desired to build an addition onto their market for the purpose of installing a drive-in beer store, where it was their desire to sell beer, wine and liquor. The father of appellee held in his own name a SDM license.

Approximately 2 years prior to the commencement of the events involved herein, the father of appellee had applied to the liquor control commission for a SDD license, but no license had been issued. In August, 1952, appellee consulted with appellant in regard to obtaining this SDD license and $1,000 was paid by appellee to appellant.

Appellee testified:

"I first saw Mr. Toy the latter part of August. He came out to the store. My father, Rocco, my brother, Rudolph, and myself talked to Mr. Toy. We told him what we had done, what we had planned to do and told him that Mr. Smith told us he could probably help us get a liquor license; but I told him I didn't see how we could get one with one only 2 doors away; because there's a State ruling on this matter. We had a SDM license and wanted to get a SDD license to sell packaged liquor. We had made application previously to the liquor control, but no action was taken on it so we forgot it and give it up for lost.

"Mr. Toy said he knew enough people in Lansing and in the liquor control—there was a new man being appointed commissioner at the time—that he thought he could get us one. We asked what the fee was and Mr. Toy said $2,500. We didn't have that kind of money to lay out at the time; so the arrangements were made to [give?] Mr. Toy $1,000 then put $1,500 in escrow. Well, I told him I couldn't put $1,500 in escrow at the time because I had most of the money tied up, so then the arrangements were made that on the deliverance of the license I would give him the other $1,500 and he said he could get us the license.

"Then I went to Mr. Toy's office with the $1,000. We talked about this drug store being there and we wouldn't get a license and Mr. Toy said he had enough friends in Lansing and the liquor control to practically assure us of a license; but if we didn't get a license it wouldn't cost us a thing. The fee was $2,500 but it was made emphatic that no license, no cost to us.

"I had called Mr. Toy and made an appointment with him to meet him at his office. I went to the bank and withdrew the money from my personal savings account and brought it to him. We talked about the liquor license deal and the conversation was that I

didn't feel like giving him $1,000 without having some assurance of getting a license; and he gave me a receipt for it and said, 'Well, you have a receipt if I don't get your license you'll get your $1,000 back.' "

When appellant was asked the question:

"Now, what was said, if anything, between you and the plaintiff regarding the charges to be made by your office in the event no license was secured?"

he answered:

"That question was asked by Mr. Celletti when he first came in and I explained to him; the reason it was asked he objected to the $1,000 retainer, he thought it was quite high for an attorney's office to ask that much. That was the amount set by our office itself; the amount that is set by our office in any case such as this; the reason being that some offices just won't handle liquor license cases; the reason also being that we know the amount of work that is involved. I explained to him that the retainer fee would be applied against any work done by the office; that if the license didn't issue the additional $1,500, of course, wouldn't be paid and there would be an accounting made of the services rendered."

Appellant testified that he wrote several letters, made a trip to the Shaefer police station, made 2 trips to Lansing, made 1 or 2 telephone calls to Lansing and a half-dozen telephone calls to the Detroit police department. Appellant further testified:

"I did approximately 10 to 12 hours of research on the question of mandamus alone; that from the very outset was our plan in this matter, was to mandamus the liquor control commission; we knew that no licenses had been issued or very few licenses had been issued even though the population of Detroit permitted after the new census in 1950 and that apparently the only way you were going to get a license to issue was by mandamus. So we went through that

entirely; I made research on that and we arrived at the conclusion that this should be done. Mr. Celletti did not want that done and we didn't do it."

Appellee testified that after his father died he contacted appellant and told appellant he was convinced they were not going to get the license and that he wanted the $1,000 returned and appellant replied that he would take the matter up with other members of his firm. Appellant admitted the request made by appellee for the $1,000 and that he did take the matter up with other members of his firm. Appellant stated: "We made a study of the work that had been done; the amount of time, the services that we felt had been rendered him and advised him that there would not be any money to be refunded."

Appellant contends that appellee is not the real party in interest and that a satisfaction of the judgment executed by appellee would not bar the estate of appellee's father from bringing action for recovery of the same retainer fee. We cannot agree with appellant's contention in this regard. The money was paid by appellee to appellant. The agreement was entered into between appellant and appellee.

CL 1948, § 612.2 (Stat Ann § 27.654) provides:

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought."

Appellant contends that the judgment entered by the lower court was contrary to the great weight of the evidence. The only issue in this case was a question of fact, namely: Under what kind of an agreement was the $1,000 paid to appellant by appellee?

We have set forth in this opinion facts which clearly show a conflict of evidence. This Court held in *Kundel* v. *Portz,* 301 Mich 195, that the trial court's findings of fact, based on conflicting testimony, will not be disturbed by this Court unless against the great weight of the evidence. We do not find in the instant case that the judgment entered by the lower court is contrary to the great weight of the evidence.

Affirmed, costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, CARR, and BLACK, JJ., concurred.

BOYLES, J., took no part in the decision of this case.