## MINNESOTA LIMITED, INC. v. PUBLIC UTILITIES COMMISSION OF HIBBING AND ANOTHER.

208 N. W. 2d 284.

June 8, 1973—No. 43599.

*Speeter, Johnson, Hautman & Olson, Vincent E. Johnson,* and *Richard H. Speeter,* for appellant.

*Abate, Wivoda & Ketola, James V. Abate,* and *Jerry H. Ketola,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and MacLaughlin, JJ.

MacLaughlin, Justice.

This is an appeal by plaintiff from a summary judgment in favor of defendant. We affirm.

The determinative facts are not in dispute. Sometime in early 1970, defendant municipality advertised for bids for furnishing, installing, placing in commercial operation, and testing a propane-air gas plant in Hibbing, Minnesota. On April 9, 1970, plaintiff submitted a bid of $137,560. On April 13, 1970, defendant advised plaintiff by letter that plaintiff was "awarded the contract" and that "proper contract documents and other necessary papers will be forwarded to you by our Engineers, Pfeifer and Schultz, Inc." On April 23, 1970, an employee of defendant's consulting engineers telephoned plaintiff's president to inquire if plaintiff would agree to a cancellation of the contract. Plaintiff's president replied that it would not so agree. On April 27, 1970, defendant informed plaintiff by letter of defendant's revocation of its award of the contract to plaintiff. Plaintiff was also informed that defendant intended to call for new bids on the project. During that same week, plaintiff's president called defendant's manager and inquired if he realized the consequences of canceling plaintiff's contract. The manager replied that he was fully aware of the consequences.

Defendant then made a second call for bids. The specifications in the second call varied from the first call in that the second call no longer specified the make and brand of certain equipment. In response, plaintiff submitted a second bid in the amount of $118,000. On May 11, 1970, the contract was awarded to another

bidder. By letter dated May 20, 1970, plaintiff advised defendant of its intention to sue for damages for breach of contract, and an action was commenced on October 28, 1970. On October 18, 1971, summary judgment was granted to defendant on the basis that the contract had been rescinded by mutual assent because of plaintiff's voluntary act of submitting a bid in response to defendant's second call for bids.

Defendant has raised the issue of whether, in fact, a contract was actually consummated between plaintiff and defendant under the facts recited above. Apparently, it is defendant's contention that no contract ever existed between the parties because the formal written contract had not been executed prior to the time defendant notified plaintiff it was revoking its award of the contract to plaintiff. While that argument is tenuous at best, we need not reach the question because we agree with the trial court that if there was a contract, it was rescinded as a matter of law by mutual assent of the parties. Therefore, for the purposes of this decision, we will assume that a valid bilateral contract between plaintiff and defendant was created by defendant's acceptance by letter of plaintiff's bid.

The determinative question is whether, on the record before us, a rescission has been effected as a matter of law. It is well established that the parties to a bilateral contract may rescind the contract by mutual consent. 4 Dunnell, Dig. (3 ed.) § 1807. Rescission of a contract by agreement or abandonment requires an offer and acceptance or, in other words, the mutual consent of the parties. S. S. Silberblatt, Inc. v. Seaboard Surety Co. 417 F. 2d 1043 (8 Cir. 1969); 5A Corbin, Contracts, § 1236. Mutual rescission requires an intent to rescind on the part of both parties. Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. 2d 641 (1954); Pennel v. Pond Union School Dist. 29 Cal. App. 3d 832, 105 Cal. Rptr. 817 (1973). Mutual assent to rescind a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties. Abdallah, Inc. v. Martin, *supra;* Marso v. Mankato Clinic, Ltd. 278 Minn. 104,

153 N. W. 2d 281 (1967); Liebsch v. Abbott, 265 Minn. 447, 122 N. W. 2d 578 (1963); Kundel v. Portz, 301 Mich. 195, 3 N. W. 2d 61 (1942). A repudiation of a contract by one party, acquiesced in by the other, is tantamount to a rescission. Country Club Oil Co. v. Lee, 239 Minn. 148, 58 N. W. 2d 247 (1953).

Based on the applicable principles of law, two questions must be answered to reach a decision in this case. First, was defendant's second call for bids an offer of rescission, and if so, was plaintiff's second bid an acceptance of the offer to rescind? Inasmuch as neither party questions that defendant's second call for bids constituted an offer to rescind the contract, we will restrict ourselves to discussing whether plaintiff, as a matter of law, accepted the offer.

Plaintiff maintains that its submission of a bid in response to defendant's second call was an offer to settle their contract dispute at another figure and should not be construed as an abandonment of the existing contract. To state it in different terms, plaintiff claims that its second bid was nothing more than an effort on its part to mitigate damages. Plaintiff contends that its failure to obtain the contract on the second round of bids merely signifies a failure of the parties to reach an agreement on their dispute resulting from the first contract. While plaintiff has forcefully advanced this theory, and was obviously placed in an extremely disadvantageous position by the acts of defendant following the first bid, we are unable to agree with plaintiff that the contract was not rescinded through the acts of the parties.

Both parties agree that there is surprisingly little case law in point on the precise issue involved. In Tunny v. City of Hastings, 121 Minn. 212, 141 N. W. 168 (1913), in response to the city's call for bids, the plaintiff submitted a bid which was accepted. The plaintiff later discovered his bid was mistakenly too low and so informed the city. The city then proceeded to negotiate with the plaintiff and prepared a contract providing for a price nearly 50 percent more than the plaintiff's original bid. The plaintiff

refused to sign the revised contract and brought suit to recover the money he had deposited with the city at the time he made the bid. The city claimed that the deposit had been forfeited by the plaintiff. We found for the plaintiff and held that, although a contract had been entered between the parties, the council's subsequent acts of negotiating and preparing another contract for an amount greater than the original bid evidenced an intent on the part of the city to release the plaintiff from the original contract and did, in fact, release him from any obligations under that contract. We held that the mutual actions of the parties constituted an abandonment of the contract and that the plaintiff was entitled to recover the amount of his deposit.

In Bromley v. McHugh, 122 Wash. 361, 210 P. 809 (1922), the defendant had plans and specifications prepared for the construction of a building. The specifications provided that the contract would be awarded to the successful bidder, and there was no reservation of a right to refuse all bids. Pursuant to the bid solicitation, six bids were submitted, and the plaintiffs' bid was the lowest. The defendant then advised the plaintiffs that he considered all the bids too high and that he intended to change the specifications. The plaintiffs submitted another bid under the changed specifications, which was somewhat less than their first bid, but they were not awarded the contract. The plaintiffs then sued for damages caused by an alleged breach of contract based upon the first bid. The Washington Supreme Court held that, assuming there was a valid contract between the parties, it had been rescinded by mutual consent of the parties, to wit, the call for a new bid under changed specifications by the defendant and the rebidding by the plaintiffs.

In most cases, the intention to rescind a contract is a question of fact. Abdallah, Inc. v. Martin, *supra*. However, we have concluded that the only intent consistent with plaintiff's second bid is an intent to accept defendant's offer of rescission. Plaintiff's argument that its intent in rebidding was to attempt renegotiation of the contract or mitigation of damages is not consistent

with the facts and, in any event, could hardly have been so interpreted by defendant. In determining contractual intent, the question is not what a party may have subjectively intended but what intent his words and acts objectively manifest. 4 Dunnell, Dig. (3 ed.) § 1742.

The trial court in his memorandum stated in part as follows:

"* * * This court is not persuaded that there is a genuine issue that plaintiff [submitted a second bid] for the purpose of mitigating damages for it would be pure speculation that plaintiff would be the ultimate successful bidder. Nor could it be construed to be an attempt at renegotiation—as a matter of law rebidding opened up the entire matter for any and all parties who wished to submit a bid. * * *

"Defendant's rescission of the first award to plaintiff is absolutely clear. * * * As a matter of law plaintiff acquiesced in such action * * * by submitting a bid pursuant thereto. Mutual rescission by acquiescence entitled defendant to a summary judgment. No genuine issues of material fact appear to exist."

Defendant's second call for bids constituted an offer to rescind the contract. As a matter of law, plaintiff's second bid amounted to acceptance of the offer to rescind. We hold, therefore, that the contract was rescinded by mutual consent of the parties. As a result, no genuine issues of material fact existed, and summary judgment was properly granted.

Affirmed.