# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2757

_____

Green Tree Servicing, LLC, a    *
Delaware Limited Liability Company,    *
   *
      Plaintiff - Appellee,    *
   *
      v.    *
   *
DBSI Landmark Towers, LLC, a    *
Delaware Limited Liability Company,    *
   *
      Defendant,    *
   *    Appeal from the United States
Pillsbury-Landmark Towers, LLC;    *    District Court for the
Howells-Landmark Towers, LLC;    *    District of Minnesota.
R&R-Landmark Towers, LLC; Plastic-    *
Landmark Towers, LLC; Paredero-    *
Landmark Towers, LLC; Sensenbaugh-    *
Landmark Towers, LLC; Bsites-    *
Landmark Towers, LLC; Ineichen-    *
Landmark Towers, LLC; Garcia-    *
Landmark Towers, LLC; Cusenza-    *
Landmark Towers, LLC; Usalis-    *
Landmark Towers, LLC; Barry-    *
Landmark Towers, LLC; Bainter-    *
Landmark Towers, LLC; SGB-    *
Landmark Towers, LLC; Maxwell-    *
Landmark Towers, LLC; M. O'Donnell-    *
Landmark Towers, LLC; L. O'Donnell-    *
Landmark Towers, LLC; Etzel-    *
Landmark Towers, LLC; Karleskint-    *
Landmark Towers, LLC; Brundidge-    *
Landmark Towers, LLC; Venturi-    *

Landmark Towers, LLC; Edwards-     *
Landmark Towers, LLC; Sharp-     *
Landmark Towers, LLC; SMG-     *
Landmark Towers, LLC; DND-     *
Landmark Towers, LLC; Cattaneo-     *
Landmark Towers, LLC; Chaikin-     *
Landmark Towers, LLC; A. Cusenza-     *
Landmark Towers, LLC,     *
    *
      Defendant Third Party Plaintiffs-    *
      Appellants,     *
    *
      v.     *
    *
Green Tree Investment Holdings II,     *
LLC,     *
    *
      Third Party Defendant -     *
      Appellee.     *

_____

Submitted: March 15, 2011
Filed: August 30, 2011

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The owners of Landmark Towers, a 25-story building in downtown St. Paul, Minnesota, appeal the district court's[1] grant of summary judgment in favor of Green Tree Servicing, LLC (Green Tree), permitting Green Tree to vacate office space it

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, now retired.

subleased from the owners' tenant, DBSI Landmark Towers Leaseco, LLC (DBSI Leaseco). We affirm.

## I.

The lease agreements at issue in this case arise from a complex real estate transaction that DBSI, Inc., and its affiliates commonly structure in order to generate revenue. DBSI, a tenant in common syndicator, or an affiliate—here DBSI Landmark Towers, LLC (DBSI Landmark)—acquires commercial property and leases it to another affiliate—here DBSI Leaseco. The affiliate subleases the property to a tenant—here Green Tree—and then DBSI sells fractional interests in the property to multiple parties as tenants in common—here 28 tenants in common (collectively the "TIC").[2] The leasing DBSI affiliate acts as landlord, receiving a management fee in exchange for collecting rent and paying operating expenses.

---

[2]The 28 tenants in common are: Pillsbury-Landmark Towers, LLC; Howells-Landmark Towers, LLC; R&R-Landmark Towers, LLC; Plastic-Landmark Towers, LLC; Paredero-Landmark Towers, LLC; Sensenbaugh-Landmark Towers, LLC; Bsites-Landmark Towers, LLC; Ineichen-Landmark Towers, LLC; Garcia-Landmark Towers, LLC; Cusenza-Landmark Towers, LLC; Usalis-Landmark Towers, LLC; Barry-Landmark Towers, LLC; Bainter-Landmark Towers, LLC; SGB-Landmark Towers, LLC; Maxwell-Landmark Towers, LLC; M. O'Donnell-Landmark Towers, LLC; L. O'Donnell-Landmark Towers, LLC; Etzel-Landmark Towers, LLC; Karleskint-Landmark Towers, LLC; Brundidge-Landmark Towers, LLC; Venturi-Landmark Towers, LLC; Edwards-Landmark Towers, LLC; Sharp-Landmark Towers, LLC; SMG-Landmark Towers, LLC; DND-Landmark Towers, LLC; Cattaneo-Landmark Towers, LLC; Chaikin-Landmark Towers, LLC; and A. Cusenza-Landmark Towers, LLC.

In this case, DBSI Landmark[3] purchased Landmark Towers and then flipped its interest to the TIC. Prior to the sale, DBSI Leaseco leased the building. The master lease agreement between the TIC[4] and DBSI Leaseco permitted DBSI Leaseco to sublease the office space, but required any sublease to contain a provision providing for the subtenant to attorn[5] to the TIC if the sublease were terminated for any reason. DBSI Leaseco subleased to Green Tree, and the sublease agreement contained Exhibit G, in which Green Tree agreed to attorn to the TIC when the TIC "terminates the Master Lease" or "otherwise succeeds to the interest of [DBSI Leaseco] under the foregoing Lease." App'x at 372.

DBSI Leaseco voluntarily filed for bankruptcy, and the master lease with the TIC and sublease with Green Tree were ordered rejected by the bankruptcy court. In its motion to reject, DBSI Leaseco stated that the sublease would be terminated as a result of the rejection of the sublease. Green Tree responded that it intended to treat the sublease as terminated under 11 U.S.C. § 365(h), which provides the circumstances under which the lessee of a debtor-lessor may treat a lease as terminated by virtue of the debtor-lessor's rejection of the lease. DBSI Leaseco did

---

[3]Green Tree named DBSI Landmark as a defendant in this lawsuit, but DBSI Landmark has not appeared other than to file a "Suggestion of Bankruptcy" with the district court. DBSI Landmark has no part in this appeal.

[4]We refer to the TIC as the owner/master landlord that entered the relevant contracts as the successor in interest of DBSI Landmark through the TIC's purchase of Landmark Towers.

[5]The concept of attornment originates from feudal law, where the lord needed the tenant's consent before transferring or selling his reversion or remainder in the property. Raines v. Hindman, 71 S.E. 738, 739 (Ga. 1911). The English common-law rule of attornment was never part of the common law in the United States, Jones v. Rigby, 43 N.W. 390, 390 (Minn. 1889), and is known now only as part of the esoterica of feudal property law. As a modern term of art, "attorn" simply means "[t]o agree to be the tenant of a new landlord." Black's Law Dictionary 147 (9th ed. 2009).

not object, but the TIC did, asserting that the terms of the sublease required Green Tree to attorn to the TIC. Green Tree sought a declaratory judgment from Minnesota state court that it could treat the sublease as terminated and vacate Landmark Towers. The TIC removed the case to the United States district court and cross-claimed for a declaratory judgment affirming the sublease. Green Tree and the TIC submitted cross motions for summary judgment, and the district court granted Green Tree's motion. The TIC appeal, and we affirm.

## II.

We review a district court's grant of summary judgment de novo, Mwesigwa v. DAP, Inc., 637 F.3d 884, 887 (8th Cir. 2011), and we will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We may affirm on any basis supported by the record." Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010).[6]

Green Tree contends that under 11 U.S.C. § 365(h), it may treat the sublease as terminated. Under section 365(h):

> If the trustee rejects an unexpired lease of real property under which the debtor is the lessor [and] if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection[.]

11 U.S.C. § 365(h)(1)(A)(i). The statute entitles Green Tree to treat the sublease as terminated if DBSI Leaseco's rejection of the sublease constituted a breach that would allow Green Tree to treat the sublease as terminated under the sublease's terms or

[6]We note that the parties agree Minnesota law governs to the extent principles of contract law dictate the result in this case.

Minnesota law. Id. Here, irrespective of section 365(h), principles of contract law dictate that DBSI Leaseco and Green Tree are no longer required to perform their obligations to each other under the sublease. DBSI Leaseco indicated its intent that the sublease be terminated during the bankruptcy proceedings, when in its motion to reject it asserted that the sublease would be terminated upon the court's approval of the rejection. App'x at 109. Green Tree indicated its intent that the sublease be terminated in the form of a tenant estoppel certificate, which it provided to DBSI Leaseco. App'x at 244-45. Accordingly, DBSI Leaseco and Green Tree mutually rescinded the sublease, and thus neither party is required to perform its obligations to the other under the contract. See Minn. Ltd. v. Pub. Utils. Comm'n of Hibbing, 208 N.W.2d 284, 285-86 (Minn. 1973) (holding that mutual rescission "requires an intent to rescind on the part of both parties" and that such intent "may be inferred from the attendant circumstances").[7]

If DBSI Leaseco and Green Tree were the only parties to the sublease, this would end the inquiry. Although most of Green Tree's legal obligations under the sublease are owed to DBSI Leaseco, Green Tree also undertook obligations to the TIC through the attornment provision, and DBSI Leaseco could not excuse Green Tree's performance of these obligations on the TIC's behalf. Contrary to Green Tree's arguments, nothing in section 365(h) indicates that a debtor-lessor's rejection of a lease extinguishes a third party's rights and obligations under the lease. Cf. In re Modern Textile, 900 F.2d 1184, 1191-92 (8th Cir. 1990) (interpreting 11 U.S.C. § 365(g) and holding that a lessor can look to the guarantor of a lessee-debtor's lease obligation despite the rejection of the lease in bankruptcy).

---

[7]This is true regardless of whether DBSI Leaseco's rejection constituted a material breach under the terms of the sublease. Mutual rescission means that both parties agree to terminate the contract irrespective of its provisions. See Busch v. Model Corp., 708 N.W.2d 546, 551-52 (Minn. App. 2006).

We first reject Green Tree's argument that the TIC cannot enforce any purported contractual obligations because the parties are not in privity of contract. Green Tree is correct that the TIC must be in privity of contract with Green Tree to enforce the sublease, Wurm v. John Deere Leasing Co., 405 N.W.2d 484, 486 (Minn. Ct. App. 1987), and that ordinarily privity does not exist between a master landlord and a sublessee, Warnert v. MGM Props., 362 N.W.2d 364, 367 (Minn. Ct. App. 1985). Here, however, the sublease contains promises between the TIC and Green Tree via the attornment provision, and therefore the parties are in privity of contract regardless of their status as master landlord and sublessee.

The dispositive question here is whether Green Tree must attorn to the TIC.[8] The sublease's attornment provision requires Green Tree to attorn to the TIC only when the TIC "terminates the Master Lease" or "otherwise succeeds to the interest of [DBSI Leaseco] under the foregoing Lease." Neither of these events occurred here. First, DBSI Leaseco, not the TIC, rejected the master lease in bankruptcy. Second, the TIC did not "succeed to the interest" of DBSI Leaseco in the sublease. Although the TIC assumed some of DBSI Leaseco's responsibilities as landlord by virtue of the master lease's terms, DBSI Leaseco never assigned its contractual interest in the sublease to the TIC prior to DBSI Leaseco's voluntary extinguishment of its rights. The TIC could not succeed to an interest in the sublease that no longer existed regardless of DBSI Leaseco's continuing obligations under the master lease or the TIC's assumption under the master lease of DBSI Leaseco's duties as landlord. The only surviving contractual interest in the sublease is the TIC's right to attornment, which, unfortunately for the TIC, is triggered only when the TIC "succeeds to the interest" of DBSI Leaseco. Thus, the sublease does not require Green Tree to attorn to the TIC here.

---

[8]Although the TIC seeks to enforce a provision in the sublease in which Green Tree agreed that the sublease was "subject and subordinate" to the master lease, Green Tree made this promise to DBSI Leaseco, not to the TIC. Accordingly, the TIC cannot enforce it unless the sublease's attornment provision was triggered here.

## III.

Accordingly, we affirm the district court's grant of summary judgment in favor of Green Tree.

_____