MARTINO v COTTMAN TRANSMISSION SYSTEMS, INC

METRO DISTRIBUTING, INC v
COTTMAN TRANSMISSION SYSTEMS, INC

Docket Nos. 167208, 170567. Submitted May 17, 1996, at Detroit. Decided
July 30, 1996, at 9:10 A.M.

In two actions brought in the Wayne Circuit Court against franchisor
Cottman Transmission Systems, Inc., franchisees Leonardo Martino
and Trans One II, Inc., in one action and Metro Distributing, Inc.,
and others in the other action sought, among other things, rescis-
sion pursuant to § 31(1) of the Franchise Investment Law, MCL
445.1531(1); MSA 19.854(31)(1), of franchise agreements that the
parties, by agreement, had made subject to Pennsylvania law.
Rescission was sought on the ground that the franchise agreements
failed to provide notice that certain of their provisions were unen-
forceable in Michigan, as required by § 8(3) of the Franchise Invest-
ment Law, MCL 445.1508(3); MSA 19.854(8)(3). The court, Richard
P. Hathaway, J., issued in both actions orders granting the franchis-
ees partial summary disposition of the rescission claims. Cottman
appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. A default judgment entered against franchisor Martino in an
action in Pennsylvania by Cottman for breach of the franchise
agreement is not entitled to full faith and credit and has no res
judicata effect on Martino's action in Michigan against Cottman.
Res judicata does not bar the Michigan action because that action
and the prior Pennsylvania action involve different subject matter
and require different sets of proof. The Pennsylvania judgment is
not entitled to full faith and credit because to give it preclusive
effect would be to contravene the public policy of Michigan with
respect to the disclosures required by § 8(3) of the Franchise
Investment Law.

2. A balancing of the parties' expectations and the interests of
Michigan and Pennsylvania indicates that it would be contrary to
the fundamental policy of Michigan, as reflected by the protections
provided to franchisees by the Franchise Investment Law, to give
effect to the parties' choice of Pennsylvania law as the law applica-
ble to the franchise agreements.

3. Cottman's claim that the franchisees are not entitled to rescission by virtue of their unclean hands is without merit. The right of rescission provided to franchisees by the Franchise Investment Law, as a statutory right, is unaffected by claims of unclean hands on the part of franchisees.

4. There were no genuine issues of material fact that could have made the grant of partial summary disposition improper.

5. Remand is required for a determination whether Cottman was returned to the status quo ante as ordered by the trial court in granting rescission of the franchise agreements.

Affirmed in part and remanded.

TAYLOR, P.J., dissenting, stated that the Pennsylvania judgment is entitled to full faith and credit and res judicata effect because the Pennsylvania action and the Michigan action both involved the same subject matter, i.e., the validity and enforceability of the franchise agreements, and that the franchisees' rescission claims are barred by unclean hands because a franchisor can raise unclean hands as a defense to a franchisee's claim of rescission under the Franchise Investment Law.

1. CONFLICT OF LAWS — CHOICE OF LAW.

The choice made by parties to a contract with respect to which state's law is to govern the contract will not be followed if the chosen state has no substantial relationship to the parties or the transaction, there is no reasonable basis for choosing that state's law, or the application of the chosen state's law would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue.

2. FRANCHISES — FRANCHISE INVESTMENT LAW — FRANCHISEES' RIGHT OF RESCISSION.

The Franchise Investment Law affords a franchisee the right to rescind a franchise agreement upon a franchisor's violation of the statute, regardless of whether the franchisee had unclean hands (MCL 445.1531[1]; MSA 19.854[31][1]).

*Rosati Associates, P.C.* (by *A. D. Rosati*), for the plaintiffs.

*Dykema Gossett* (by *Fred L. Woodworth* and *Thomas M. Pastore*), for the defendant.

Before: Taylor, P.J., and Marilyn Kelly and J. R. Cooper,* JJ.

Marilyn Kelly, J. Defendant Cottman Transmission Systems, Inc. appeals from grants of partial summary disposition for plaintiffs in two cases, consolidated on appeal. Cottman asserts that plaintiff Leonardo Martino's action for rescission is barred by res judicata, because a prior Pennsylvania judgment should be given full faith and credit by Michigan courts. It argues that plaintiffs Martino and Trans One II, Inc., failed to state a cause of action for rescission under MCL 445.1531; MSA 19.854(31), because Pennsylvania rather than Michigan law controls the franchise agreement. Cottman asserts that plaintiffs have unclean hands which bar their claim for rescission. Finally, it alleges that issues of material fact remain unresolved, precluding summary disposition. We affirm in part and remand for further findings.

I

Cottman is a Pennsylvania corporation which licenses automotive transmission service centers in various states. Due to financial problems, Cottman and A-1 Transmissions entered into an agreement where Cottman would offer existing A-1 franchisees the opportunity to convert to Cottman Transmission franchises. The converted franchises would operate as A-1/Cottman Transmission Centers. Cottman also agreed to manage all franchise services on behalf of A-1 for franchisees who opted not to convert. Upon signing the agreement with A-1 Transmissions, Cottman held meetings with the A-1 franchisees. Cottman

---

* Circuit judge, sitting on the Court of Appeals by assignment.

provided plaintiffs with a modified Uniform Transmission Offering Circular, but did not give them a separate Michigan Circular. Plaintiffs converted to an A-1/Cottman franchise.

In December, 1991, Cottman allegedly discovered that Martino was underreporting his gross sales and defrauding Cottman of licensing and advertising fees. On March 3, 1992, Cottman filed a lawsuit against Martino in Pennsylvania for breach of the franchise contract. Instead of responding to the complaint, Martino filed this action for rescission. He claimed that Cottman failed to provide proper notice that certain of its contract's provisions are void and unenforceable under Michigan law, as required by MCL 445.1508(3); MSA 19.854(8)(3). Meanwhile, a default judgment was entered against Martino in the Pennsylvania action.

In this case, the trial court granted Martino's motion for summary disposition, holding Cottman failed to comply with MCL 445.1508(3); MSA 19.854(8)(3) and MCL 445.1531(2); MSA 19.854(31)(2). It granted plaintiffs' request for a rescission.

II

We review a trial court's grant of summary disposition de novo examining the record to determine whether the prevailing party was entitled to judgment as a matter of law. *G&A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994).

Defendant argues that res judicata bars Martino's action for rescission. The doctrine of res judicata is applied broadly. It includes issues which the parties sought to have adjudicated as well as "every point which properly belonged to the subject of litigation,

and which the parties, exercising reasonable diligence, might have brought forward at that time." *Van Pembrook v Zero Mfg Co*, 146 Mich App 87, 100-101; 380 NW2d 60 (1985).

Cottman instituted the Pennsylvania action for breach of the franchise contract. It alleged that Martino was systematically underreporting his gross sales and defrauding Cottman. The cause of action in Michigan seeks rescission of the franchise agreement for Cottman's failure to provide proper notice as required by the Michigan Franchise Investment Law (MFIL), MCL 445.1501 *et seq.*; MSA 19.854(1) *et seq.* A different set of proofs is required for each of the two causes. Moreover, the subject matter is different. As a consequence, res judicata does not bar plaintiffs' claim for rescission. *Van Pembrook, supra* at 101.

Nor does plaintiffs' failure to raise rescission as a counterclaim to the Pennsylvania complaint bar this action. The full faith and credit clause of the federal Constitution requires that judgments be given the same full faith and credit in every court within the United States as they have by law or usage in the courts of such State from which they are taken. US Const, art IV, § 1. Its purpose is to prevent the litigation of issues in one state that have already been decided in another. *Van Pembrook, supra* at 104.

Were the issue before us the enforcement of the Pennsylvania judgment, we would conclude that the judgment must be enforced. *Int'l Recovery Systems, Inc v Gabler (On Rehearing)*, 210 Mich App 422, 424; 527 NW2d 20 (1995). However, the issue before us today, notwithstanding the Pennsylvania judgment, is whether plaintiffs are nevertheless entitled to rescission.

We find that the full faith and credit clause in conjunction with res judicata does not preclude plaintiffs' action for rescission. Plaintiffs' rescission claim is grounded in Michigan's franchise statute. Pennsylvania's laws contain no analogous right. Therefore, because the Pennsylvania court did not apply Michigan law in deciding the breach of contract action, plaintiffs could not have raised Michigan's statutory remedy of rescission. In effect, plaintiffs would have to forfeit the claim. The full faith and credit clause does not compel such a result. See *Van Pembrook, supra* at 104-105.

The dissent argues that plaintiffs could have brought a fraud claim in Pennsylvania or attempted to change venue to Michigan. However, the issue before us today is not what could have been done differently in Pennsylvania, but rather, whether plaintiffs' rescission claim is barred. The hypotheticals posed by the dissent are irrelevant to the issue before us.

Finally, we must determine whether Pennsylvania's, rather than Michigan's, franchise laws should be given effect out of comity.

We are hesitant to overrule Michigan law where the laws of another state would contravene Michigan's public policy. The public policy of this state is fixed by its constitution, its statutes and the decisions of its courts. *Van Pembrook, supra* at 105.

The MFIL has deemed that certain contractual provisions are void and unenforceable as between franchisors and franchisees. MCL 445.1508(1) and (3); MSA 19.854(8)(1) and (3). The provisions are found in MCL 445.1527; MSA 19.854(27). Included is the requirement that, at least ten business days before executing a franchise agreement, the franchisor must

notify the prospective franchisee of contractual provisions which the statute renders unenforceable.

Pennsylvania law contains no such requirement. If we were to apply Pennsylvania's law in ruling on this Michigan case, we would effectively override Michigan's law. The effect would be to abrogate plaintiffs' right to rescind. We find that Pennsylvania law should not be given preclusive effect where it would nullify the law of this state as expressed in the MFIL.

III

Alternatively, defendant argues that Pennsylvania law must be followed, because the franchise agreement stated that Pennsylvania law controlled the franchise agreement.

In a similar situation, the Michigan Supreme Court ruled that, when determining the applicable law, we are required to balance the expectations of the parties with the interests of the States. *Chrysler Corp v Skyline Industrial Services, Inc*, 448 Mich 113, 125; 528 NW2d 698 (1995). In doing so, the Court adopted, as guidelines, §§ 187 and 188 of the Second Restatement of Conflicts.

Section 187(1) permits the application of the parties' choice of law if the issue is one the parties could have resolved by an express contractual provision. However, there are two exceptions. The parties' choice of law will not be followed if (1) the chosen state has no substantial relationship to the parties or the transaction, or (2) there is no reasonable basis for choosing that state's law. Section 187(2)(a). Also, § 187(2)(b) bars the application of the chosen state's law when it "would be contrary to the fundamental policy of a state which has a materially greater inter-

est than the chosen state in the determination of the particular issue, and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Here, we find compelling evidence that, in this state, Michigan has a materially greater interest than Pennsylvania in applying its franchise laws. A fundamental policy may be embodied in a statute which (1) makes one or more kinds of contracts illegal or (2) which is designed to protect a person against the oppressive use of superior bargaining power. Comment g to § 187 of the Restatement 2d, p 568. As gleaned from the MFIL, Michigan's notice requirements are designed to make certain contract provisions illegal and to protect potential franchisees from the superior bargaining power of franchisors.

Applying Pennsylvania, rather than Michigan, law would result in a substantial loss of protection provided by the MFIL. As franchisors under Pennsylvania law do not have to provide the notice required by the MFIL, Pennsylvania's franchise law violates the fundamental public policy of Michigan. Therefore, Michigan law, not Pennsylvania law, applies.

IV

Cottman asserts that, if Michigan law applies, plaintiffs' claim for rescission is foreclosed by their own unclean hands and material breach of the franchise agreement. We find that no language in the statute suggests that the fact a franchisee's hands are unclean is considered in deciding whether to allow rescission. Moreover, in *Interstate Automatic Trans-*

*mission Co, Inc v Harvey*[1] this Court allowed rescission even though the franchisee was being sued for failure to pay royalties in violation of the franchise agreement. We did not require that the franchisee have clean hands before allowing rescission. We will not impose the requirement of clean hands on a franchisee where the MFIL gives a franchisee an unqualified right to rescission upon a franchisor's violation of the MFIL.

The dissent relies on *Stanton v Dachille*[2] for the proposition that "absent express legislative instruction to the contrary, a trial court should not grant rescission unless the party requesting it is blameless." However, *Stanton* does not stand for that proposition. *Stanton* involves a generic contract case. It does not mention the absence of legislative instruction. It does not involve a situation, such as is present here, where rescission is a remedy afforded by statute.

V

Even so, Cottman argues that there are genuine issues of material fact as to whether plaintiffs have established a claim for rescission, precluding summary disposition. Cottman argues that a factual question exists concerning whether this was a sale or the voluntary transfer of a franchise. The MFIL provides an exemption from its notice requirements where "(t)here is an extension or renewal of an existing franchise or the exchange or substitution of a modified or amended franchise agreement where there is no interruption in the operation of the franchise busi-

---

[1] 134 Mich App 498; 350 NW2d 907 (1984).
[2] 186 Mich App 247; 463 NW2d 479 (1990).

ness of the franchisee, and no material change in the
franchise relationship." MCL 445.1506(1)(e); MSA
19.854(6)(1)(e).

Here, the evidence showed that the A-1 franchise
was terminated, and a new agreement was negotiated
and signed. The identity of the franchisor changed.
We find that no reasonable person could conclude
that a material change did not occur in the
relationship.

VI

Next, defendant argues that a material question of
fact existed as to whether plaintiffs waited unduly
before seeking rescission. In *Interstate, supra,* we
allowed rescission, even though two years had
passed. We ruled that the franchisor was entitled to
recover the fair value of benefits provided to the fran-
chisee during the time the agreement was in place. In
this case, we find that any delay on plaintiffs' part in
seeking rescission did not create a genuine issue of
material fact.

VII

Finally, Cottman argues that a question of fact
exists as to whether Cottman was returned to the sta-
tus quo ante. Following the trial court's grant of sum-
mary disposition for plaintiffs on the issue of rescis-
sion, it ordered that Cottman be returned to its
existing state before the contract. At the August 14,
1992 hearing, the trial court directed the parties to
submit proposed orders detailing the amounts owed
to Cottman by plaintiffs, in order to properly effectu-
ate the pre-contract status quo. Although orders were
submitted, the final disposition of the issue is unclear.

Therefore, we remand this matter to the trial court with the direction that it return Cottman to the status quo ante. *Interstate Automatic Transmission Co, supra* at 502-503.

Affirmed in part and remanded. We do not retain jurisdiction.

J. R. COOPER, J., concurred.

TAYLOR, P.J. (*dissenting*). I respectfully dissent.

While the majority pays lip service to the fact that the Pennsylvania judgment is entitled to full faith and credit under the federal constitution, its holding deprives the Pennsylvania judgment of the full faith and credit to which it is entitled. Under the Full Faith and Credit Clause, Michigan courts are barred from considering matters previously determined in a court of another state. *Jones v State Farm Mutual Automobile Ins Co*, 202 Mich App 393, 406; 509 NW2d 829 (1993). This constitutional provision also requires Michigan courts to give res judicata effect to the judgments of the court of the other state. *Id.*

After correctly recognizing that Michigan applies the doctrine of res judicata broadly, the majority declines to do so and holds that the Pennsylvania judgment is not entitled to res judicata effect with respect to plaintiffs' rescission actions. The reason advanced for this by the majority is that the Pennsylvania lawsuit and the Michigan lawsuits involve different subject matters and different sets of proof. I disagree.

With regard to this distinction between the Pennsylvania action and the Michigan actions that the majority urges, it is well to recall that defendant's five-count Pennsylvania complaint alleged: (1) fraud;

(2) breach of contract—failure to deal fairly and honestly; (3) breach of contract—unauthorized advertising; (4) breach of contract—license fees owed; and (5) entitlement to attorney fees and collection expenses under the franchise contract.

It is apparent these Pennsylvania claims are founded upon the validity, and alleged breach, of the parties' franchise contract. Plaintiffs' Michigan lawsuits were premised on a claim that the franchise contract was invalid for failure to include certain statutorily required warnings, and they sought rescission as allowed by the Michigan Franchise Investment Law (MFIL) MCL 445.1501 *et seq.*; MSA 19.854(1) *et seq.* The Michigan lawsuits clearly also test the validity of the contract. The lawsuits filed in each state concern the same subject: the validity of the franchise contract and its enforceability. It would seem that even under a narrow application of the res judicata doctrine, to say nothing of a broad rule, that these would be considered the same subject matter. Under such circumstances, plaintiffs' Michigan lawsuits constitute an improper attempt to collaterally attack the validity of the contract that the Pennsylvania judgment found to be valid. *Northern Ohio Bank v Ket Associates, Inc,* 74 Mich App 286, 290; 253 NW2d 734 (1977); *Peters Productions, Inc v Desnick Broadcasting Co,* 171 Mich App 283, 286; 429 NW2d 654 (1988).

Further, even if there were elements in the Michigan lawsuits that were not found in the Pennsylvania lawsuit's pleadings, this would not prevent the finding of res judicata. The United States Supreme Court stated as follows in *Federated Dep't Stores, Inc v*

*Moitie,* 452 US 394, 398; 101 S Ct 2424; 69 L Ed 2d 103 (1981):

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised in that action. Commissioner v Sunnen,* 333 US 591, 597, 68 S Ct 715, 719, 92 L Ed 898 (1948); *Cromwell v County of Sac,* 94 US 351, 352-353, 24 L Ed 195 (1877). Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. [Emphasis added.]

The question, then, becomes whether plaintiffs' rescission claim could have been raised in the Pennsylvania action.[1] The majority argues that plaintiffs could not have raised their rescission claim in the Pennsylvania action because the rescission claim is grounded in Michigan's franchise statute and Pennsylvania has no analogous provision.

First, it must be noted that the parties' contract contains a clause stating that Pennsylvania law would apply. While the MFIL forbids forum selection clauses, it does not forbid choice of law clauses. *Banek Inc v Yogurt Ventures USA, Inc,* 6 F3d 357, 360 (CA 6, 1993). Thus, it is argued that plaintiffs forfeited their Michigan statutory remedy of rescission when they signed their franchise agreements. This is true, of course, unless application of the foreign state's law will violate some fundamental Michigan public policy. *Banek, supra; JRT, Inc v TCBY Systems, Inc,* 52 F3d 734, 739 (CA 8, 1995). We need not, however, grapple

---

[1] Thus, the majority's assertion that the issue is not what could have been done differently in Pennsylvania is patently erroneous.

with the issue whether application of Pennsylvania
law would violate a specific Michigan public policy
because application of Pennsylvania law would not
change the outcome required by Michigan law. The
reason is that plaintiff Martino admits he did not have
a valid rescission claim in Pennsylvania and, as
explained below, his unclean hands should preclude
rescission under Michigan law.

Second, plaintiffs could have argued that defend-
ant's failure to provide notice that certain contract
clauses were void and unenforceable under Michigan
law constituted fraud or a fraudulent misrepresenta-
tion under Pennsylvania law. See *Cottman Transmis-
sion Systems, Inc v Melody*, 869 F Supp 1180 (ED Pa,
1994), where a judge compared a franchisee's rights
under the California franchise statutes and under
Pennsylvania law and concluded application of Penn-
sylvania law did not cause a substantial erosion of the
protections provided by the California franchise stat-
utes because the protections and remedies provided
under Pennsylvania law were substantially the same.
Further, plaintiffs could have brought a motion to
change venue to Michigan under the doctrine of
forum non conveniens with relation to the Penn-
sylvania action. Such a motion is recognized in Penn-
sylvania. See 42 Pa Cons Stat Ann 5322(e). If the
Pennsylvania court granted such a motion, plaintiffs
could have asserted in a Michigan court (as they did
below) their claim that they were entitled to rescis-
sion. As the disposition in the lower court and before
this panel shows, they might well have been
successful.

In sum, on the basis of the Full Faith and Credit
Clause of the federal constitution considered in con-

junction with the doctrine of res judicata, I would reverse the trial court's granting of rescission in plaintiffs' favor and remand for entry of a judgment in defendant's favor. I therefore believe it is not necessary to reach the other issues discussed by the majority. However, because the majority has discussed them, I offer the following additional comments.

The majority also states that the MFIL gives a franchisee an unqualified right to rescission upon a franchisor's violation of the MFIL even if the franchisee has unclean hands or has materially breached the franchisee agreement. I disagree.

While the majority's conclusion in this regard appears to be supported by some language in *Interstate Automatic Transmission Co, Inc v Harvey*, 134 Mich App 498; 350 NW2d 907 (1984), I would not follow this part of the *Interstate Automatic* case because it is not clear that the issue of equitable defenses was raised by the parties or focused upon by the Court. Further, even if I were to assume the case so held, I would not follow it because it would represent bad law that we are not bound to follow as precedent. Administrative Order No. 1996-4.

The idea that rescission can be awarded to those with unclean hands, which is what the majority has decided, is a novel and disturbing notion, and the fact one panel of this Court may have implied as much, should not cause us to reach the same misbegotten conclusion again. Indeed, the majority's conclusion is directly contrary to *Kundel v Portz*, 301 Mich 195, 210; 3 NW2d 61 (1942), which unremarkably stated that "rescission, whether legal or equitable, is governed by equitable principles."

Moreover, the majority's conclusion is not mandated by the language of the MFIL. At issue here is the portion of the MFIL that states that a person who sells a franchise in violation of certain sections of the MFIL is liable to the person purchasing the franchise for damages or rescission. MCL 445.1531(1); MSA 19.854(31)(1). The majority states that it can find no language in the statute suggesting that a franchisee's unclean hands are a factor in deciding whether to grant rescission. While the statute does not expressly mention defenses, this is not only not unusual, but the reverse would be. Repeatedly in our statutes equitable remedies are referred to without recitation of allowable defenses. It is assumed, and always has been, that the statutes will be applied in accord with common-law understandings and case law explanations that those familiar with these terms of art are held to understand. Indeed, the majority itself proves the pervasiveness of this understanding by utilizing this approach when it requires the return to the status quo ante notwithstanding the fact that the statute omits any reference to such an equitable requisite. Under the majority's logic, the statute's omission of the need to return the parties to the status quo ante should foreclose such a requirement.

There is no good reason why the venerable rules regarding rescission should not apply here. As a general matter, a party may seek to rescind a contract, on the basis of fraud, mistake, or innocent misrepresentation. 5A Callaghan's Civil Jurisprudence, Contracts, § 255, Right to Renounce or Rescind, pp 348-349. In order to warrant rescission, there must be a material breach affecting a substantial or essential

part of a contract. *Holtzlander v Brownell*, 182 Mich
App 716, 721; 453 NW2d 295 (1990).

I would hold that the Legislature's statement that
rescission may be had if a franchisor violates certain
sections of the MFIL was intended (1) to inform the
courts that failure to have the required language
would be a suitable new reason for granting rescis-
sion in addition to the previously recognized stan-
dards of fraud, mistake, and innocent misrepresenta-
tion and (2) to cut short any claim that omission of
these terms was not a material breach affecting a sub-
stantial or essential part of the contract. In no event,
however, did the Legislature mean to foreclose recog-
nized defenses to a rescission request. Inclusion of
the term "rescission" in the statute does not grant a
franchisee an absolute right to rescission without
consideration of the franchisee's conduct. As in all
equitable matters, a trial court should not grant
rescission unless the party requesting it is blameless.
*Stanton v Dachille*, 186 Mich App 247, 260; 463 NW2d
479 (1990). A party that has breached a contract (as
the trial court found Martino had in the case at bar) is
not entitled to rescission. *Id*. Further, to put an even
finer point upon this issue in the context of this case,
rescission is not available to a party that has failed to
make payments required by a contract. *Miller v
Smith*, 276 Mich 372, 375; 267 NW 862 (1936). If the
Legislature wished to foreclose equitable defenses, it
could have stated as much in the MFIL.

Therefore, even if the Pennsylvania judgment was
not entitled to full faith and credit and res judicata
effect (which it is), I would find, on the basis of plain-
tiff's unclean hands and material breach of the con-

tract, that the trial court erred in granting rescission to plaintiffs.

I would reverse the orders of the trial court and remand for entry of summary dispositions in defendant's favor and for consideration of defendant's request for injunctive relief enforcing the post-termination provisions of the franchise contract.