**LOWRY COMPUTER PRODUCTS, INC., Plaintiff,**

v.

**Dadre L. HEAD, Defendant.**

No. CIV.A. 97–40356.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 15, 1997.

**1112**

Robert M. Vercruysse, James E. Roach, Vercruysse, Metz, Bingham Farms, MI, for plaintiffs Lowery Computer Products, Inc.

Mark S. Hayduk, Hayduk, Andrews, Detroit, MI, for defendant Dadre L. Head.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

GADOLA, District Judge.

Before the court is plaintiff's motion for preliminary injunction pursuant to Fed. R.Civ.P. 65(a). For the reasons set forth below, this court will grant plaintiff's motion.

**Factual Background**

This case involves the question of enforceability of a non-compete agreement between plaintiff, Lowry Computer Products, Inc. ("Lowry"), and defendant, Dadre L. Head. Lowry is in the business of selling computer hardware and software for barcode systems, printing and other related information technology systems. Lowry has accounts in 48 states, and sells its products to major national and international corporations. Lowry acquired Data ReCall in 1995. At the time of the acquisition, defendant, a California resident, was employed by Data ReCall as a sales agent. Defendant signed an employment agreement with Lowry and became a Lowry employee on or about August 13, 1995. The agreement contained a covenant not to compete which required defendant to refrain from accepting employment with competitors of Lowry for a period of one year after the termination of her employment. The agreement also contained a confidentiality provision requiring the defendant not to disclose any trade secrets or confidential information. In addition the agreement contained a forum selection clause, providing that the agreement would be "governed by and enforceable in accordance with Michigan law."

At all relevant times, defendant was a resident of California, and worked out of an office in California. On August 19, 1997, defendant advised Lowry that she was terminating her employment effective August 29, 1997. Apparently, defendant was growing concerned about reductions in staff of the California office in which she worked. Defendant also informed Lowry that she had accepted an offer of employment from Peak Industries, Inc. ("Peak"). Lowry alleges that Peak is a direct competitor of Lowry, and further, that if defendant is allowed to work for Peak, it will necessarily cause the dissemination of its protected trade secrets and confidential information.

On August 22, 1997, Lowry filed suit in Livingston County Circuit Court to enforce the employment agreement. The Circuit Court issued an *ex parte* temporary restraining order prohibiting the defendant from working for Peak, or from disclosing any confidential information, in accordance with the terms of the employment agreement. On August 29, 1997, defendant removed this case to this court on the basis of diversity jurisdiction. Plaintiff filed the instant motion for preliminary injunction on September 23, 1997.

**Discussion**

**1. Standard for a preliminary injunction**

The parties agree that in order to succeed on a claim for a preliminary injunction, the following four factors must weigh in favor of granting an injunction in favor of plaintiff:

(1) that plaintiff has shown a likelihood of success on the merits;

(2) that irreparable harm could result to plaintiff if the preliminary injunction is not issued;

(3) that issuing the preliminary injunction would not harm third parties; and

(4) that the public interest would be served by issuance of the preliminary injunction.

See *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992); *Gougeon Brothers, Inc. v. Hendricks,* 708 F.Supp. 811, 813 (E.D.Mich.1988).

## A. Likelihood of success on the merits

### 1. Choice of law

■ Initially, this court must determine what law will apply in evaluating the enforceability of the non-compete provisions of the employment agreement. Lowry asserts that Michigan law should apply because the agreement specifically so provides. Defendant contends that California has a materially greater interest in this litigation than does Michigan, and because she contends that the non-compete provision would be violative of a fundamental public policy of California, defendant contends that California law must apply in this action. For the reasons outlined below, this court finds that Michigan law will apply to this dispute.

Lowry relies primarily on the case of *Superior Consulting, Inc. v. Walling,* 851 F.Supp. 839, 846–47 (E.D.Mich.1994). In that case, the parties had executed an employment agreement with a provision specifically indicating that the agreement "will be governed by and interpreted in accordance with the laws of the state of Michigan." In deciding that Michigan law applied to the parties' agreement, the court held:

> Accepting [defendant's] argument would have required the Court to interpret the Choice of Law provision of the ... agreement as specifying only the application of Michigan's choice of law rules, as opposed to Michigan's substantive law regarding non-competition and related contractual provisions. Such an interpretation strikes the Court as obtuse at best. In crafting the contract's Choice of Law provision, the parties agreed to apply a specific body of law rather than rely on the choice of law regime of the forum in which the suit may later be brought. Otherwise the Choice of Law provision makes no sense. Because [plaintiff] operates in many states, merely specifying a state's choice of law rules would be self-defeating, as it would not give [plaintiff] any certainty as to what substantive law would ultimately apply to any action under the contract.

*Id.* at 846. Lowry contends that the language of the contract in the instant case is almost identical to the language of the agreement in *Walling.* In addition, the provisions concern the same subject matter, namely non-competition agreements. Moreover, Lowry asserts that it is in a similar position as the plaintiff in *Walling* in that it operates in many states, and would similarly suffer from the lack of certainty the court was concerned with in *Walling.*

Defendant contends that the court in *Walling* erred by ignoring "an entire jurisprudence that would not exist if contractual choice of law clauses did not include conflict of law rules." (Def. resp. br. at 4, n. 1). Defendant argues that because the choice of law provision in this contract ought to include Michigan's conflicts of law rules, this court ought to engage in an analysis of §§ 187–88 of Restatement (Second) of Conflict of Laws to determine which state's law should apply in this case.

Defendant does not offer a rational basis for distinguishing *Walling* from the instant case. Her sole argument appears to be that the court decided *Walling* improperly. Because the holding and reasoning of *Walling* appear to this court to be reasonable and advisable, this court will apply *Walling* to the facts of this case. Accordingly, Michigan law will govern this dispute.

■ However, this court notes that even if it were to engage in the Restatement analysis, it appears that Michigan law would still apply to the instant case.

As an initial matter, defendant is correct in asserting that Michigan has adopted the test found in §§ 187–88 of the Restatement to govern the applicability of choice of law provisions. *See Chrysler Corp. v. Skyline Indus. Serv., Inc.,* 448 Mich. 113, 125, 528 N.W.2d 698 (1995); *Martino v. Cottman Transmission Sys., Inc.,* 218 Mich.App. 54, 60, 554 N.W.2d 17 (1996). The basic form of the analysis was outlined by the court in *Martino:*

> Section 187(1) permits the application of the parties' choice of law if the issue is one the parties could have resolved by an express contractual provision. However, there are two exceptions. The parties' choice of law will not be followed if (1) the chosen state has no substantial relationship to the parties or the transaction, or (2) there is no reasonable basis for choosing that state's law. Also, § 187(2)(b) bars the

application of the chosen state's law when it 'would be contrary to the fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue, and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'

*Id.* at 60–61, 554 N.W.2d 17.[1] It is clear that Michigan has a substantial relationship to the parties and the transaction, as Lowry is a Michigan corporation. In addition, there is more than a reasonable basis for choosing Michigan law, namely, to ensure that Lowry will have some certainty in defending its rights in suits with its employees all over the country. As a result, the only exception that would arguably apply would be that contained in § 187(2)(b). As a result, the question for this court is whether California has a materially greater interest than Michigan in the determination of the issues in this case, and whether the non-compete provision is violative of a fundamental public policy of California.[2]

Defendant argues that California has a materially greater interest than Michigan based on the fact that both parties do business in California, whereas only Lowry does business in Michigan. In addition, Defendant claims that California will have to deal with the possible unemployment of one of its residents.

This court finds that these bases are insufficient to support the claim that California has a materially greater interest in this litigation than does Michigan. Lowry offers a persuasive argument that Michigan has the materially greater interest in this case. Lowry cites *Ferrofluidics v. Advanced Vacuum Components,* 968 F.2d 1463, 1468 (1st Cir.1992), for the proposition that, "[w]hile California certainly has a strong interest in monitoring effects on in-state competition [regarding non-compete agreements], New Hampshire has an equally strong interest in protecting New Hampshire businesses from breaches of employment agreements and consequent losses of goodwill." Lowry asserts that Michigan has these same interests. Moreover, as noted by the court in *ISC–Bunker Ramo Corp. v. Altech, Inc.,* 765 F.Supp. 1310, 1335–36 (N.D.Ill.1990), there is a strong interest in the uniform interpretation of employment contracts.

This court also rejects defendant's contention that the possibility that she may ultimately need California state assistance necessitates a finding that California has a materially greater interest in this case. This argument was soundly rejected as too speculative in *Neveux v. Webcraft Tech., Inc.,* 921 F.Supp. 1568, 1573 (E.D.Mich.1996). These considerations suggest that Michigan has the materially greater interest in this case.

Nor does it appear that the non-compete agreement in this case would violate a fundamental public policy of California. Defendant points to the fact that Michigan has a statute specifically allowing reasonable covenants not to compete (M.C.L. § 445.774a), whereas California has a statute generally disallowing such agreements (Cal. Bus. & Prof.Code § 16600). However, as noted by the court in *Shipley Co. v. Kozlowski,* 926 F.Supp. 28, 30 (D.Mass.1996), "California does not have a fundamental policy barring all non-competition clauses." As held by the California Supreme Court, § 16600 "invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment ... unless they are necessary to protect the employer's trade secrets." *Muggill v. Reuben H. Donnelley Corp.,* 62 Cal.2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965); *see also Metro Traffic Control, Inc. v. Shad-*

---

1. In determining the state of applicable law in the absence of an effective choice by the parties pursuant to § 188, courts take into account the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, an the domicile residence, nationality, place of incorporation and place of business of the parties.

2. This discussion assumes that California law would apply in the absence of an effective choice by the parties under § 188(2). In truth, this question is not at all clear. Considering the factors in § 188(2), Michigan and California seem to have relatively similar contacts. However, because the other two considerations of § 187(2)(b) weigh in favor of applying Michigan law, this court will apply Michigan law to this agreement without deciding the question.

*ow Traffic Network,* 22 Cal.App.4th 853, 859, 27 Cal.Rptr.2d 573 (1994).

Trade secrets are precisely what is at issue in this case. Whether defendant is actually in possession of trade secrets is hotly contested. Defendant claims that she did not learn any confidential information while at Lowry. In addition, she claims that she would be working with an entirely different customer base and product line while at Peak. Essentially, defendant claims that she sold certain technology to "middle men" while at Lowry, and at Peak, she would be engaged in selling fully finished products and services to "end-users." For its part, Lowry asserts that defendant has access to customer lists, pricing schemes, supplier discount information and profit margin information. Lowry asserts, and defendant denies, that none of this information is available to the general public. Moreover, Lowry contends that defendant sold products to at least 28 "end-users" in 1997 alone.

While the issue is disputed, it appears from the submissions of the parties that defendant is in the possession of at least some confidential information or trade secrets belonging to Lowry. As a result, this court finds at this point that California does not have a fundamental public policy preventing the non-complete clause from being enforced in this case.

For the foregoing reasons, this court finds that Michigan law applies to this dispute.

## 2. Application of Michigan law to this dispute

Defendant makes essentially three arguments that the non-compete clause in this case is unenforceable under Michigan law.

■ First, defendant claims the agreement is unenforceable because Lowry engaged in fraud in inducing defendant to sign the agreement. Defendant contends that Lowry representatives told former Data Re-Call employees, including defendant, that they needed to sign the employment agreements immediately or risk losing their jobs. Defendant also contends that a Lowry representative said that the agreements were not enforceable against California employees, and that someone else was told that the agreements would not prevent employees from accepting jobs with other companies.

Even if these conversations took place (and Lowry denies that they did), this court finds defendant's argument dubious. It is not clear exactly what was said to the Data Re-Call employees, but defendant is a relatively sophisticated party, and she should be held to the terms of the agreement. She clearly had the right to consult an attorney before signing the agreement, which she failed to do. If defendant accepted the oral representations of a senior Lowry sales executive that the agreements were not enforceable against California employees, a fact which is not at all indicated by the terms of the agreement, then defendant must bear some of the responsibility for the consequences of that erroneous belief. Moreover, this court finds that defendant's reliance on secondhand information to the effect that employees could still accept jobs with competitors was unreasonable in light of the circumstances of this case.

■ Defendant's second argument is that the agreement is unenforceable for lack of consideration. Defendant's claim is that her terms and conditions of employment did not change upon the signing of the agreement. Lowry points to *Robert Half Int'l, Inc. v. Van Steenis,* 784 F.Supp. 1263, 1273 (E.D.Mich.1991), in which the court held that continuing employment is enough consideration to support an employment agreement entered into with a new employer in a case such as this. The court in *Van Steenis* did note a distinction between a case where the prior employment had been at will, as opposed to a set term of years. However, defendant has produced no substantive evidence to this point that Lowry was previously contractually obligated to retain defendant after acquiring Data ReCall. Accordingly, this court finds that continuing employment is sufficient consideration to support the agreement in this case.

■ Finally, defendant argues that the non-compete clause in the agreement is unenforceable because it is unreasonable under M.C.L. § 445.774a. According to Michigan law, a non-compete agreement is enforceable provided it is reasonable with respect to du-

ration, geographical area, and the line of business is seeks to limit. Defendant argues that the agreement is unreasonable with respect to all three areas. However, Lowry provides sufficient support to establish a likelihood of success on the merits of its claim that this court should uphold the non-compete agreement.

As to duration, courts have upheld time periods of six months to three years. *See, e.g., Walling,* 851 F.Supp. at 847 (six months); *Van Steenis,* 784 F.Supp. at 1274 (twelve months); *Stubblefield v. Siloam Springs Newspapers, Inc.,* 590 F.Supp. 1032 (W.D.Ark.1984)(holding that under Arkansas law, maximum duration of non-compete clause incident to employment agreement is three years). Given the highly competitive nature of the field in this case, a one-year duration appears reasonable.

As to geographical limitation, the *Walling* court held that an unlimited geographical scope is reasonable if the plaintiff's business is sufficiently national and international in scope. *Walling,* 851 F.Supp. at 847 (holding "[Unlimited geographical scope] can be reasonable if the employer actually has legitimate business interests throughout the world"). Lowry services accounts in 48 states and in various foreign countries. This appears to be precisely the type of scenario envisioned by the court in *Walling.*

As to line of business, defendant claims that she will be effectively prevented from holding any job she has had selling computer products in the past. Lowry asserts, however that defendant would only be prohibited from selling barcode systems and related products. According to Lowry, this is only a small part of the market for computer software and products. It does not appear from the submissions of the parties at this point that defendant would be sufficiently restricted to justify striking the non-compete provision as unreasonable.

Because it appears that the agreement was not entered into by means of fraud or without consideration, and because the non-compete provision in the parties agreement appears reasonable under Michigan law, this court finds that Lowry has established a reasonable likelihood of success on the merits in this case.

## B. The other preliminary injunction factors

 The other preliminary injunction factors depend mainly on the amount of confidential information that defendant possesses and might be reasonably expected to divulge to Peak. As one might expect, defendant claims not to possess any confidential information, and to the extent she does, she claims that she will have no occasion to disclose the information to Peak. On the other hand, Lowry claims that defendant possesses a substantial amount of confidential information in the form of customer lists, profit margins, pricing schemes and the like. Moreover, plaintiff claims that just by virtue of operating in the business at Peak, defendant will be using confidential information to Lowry's detriment. The more confidential information defendant possesses and the higher the likelihood that defendant will pass that information on to Peak, the more the other preliminary injunction factors (particularly irreparable injury and public interest) will weigh in favor of granting a preliminary injunction. The loss of consumer goodwill and the weakened ability to fairly compete that would result from disclosure of trade secrets and the breach of a non-compete agreement does establish irreparable injury. *See Basicomputer,* 973 F.2d at 512; *Walling,* 851 F.Supp. at 847. In addition, this court has determined that the enforcement of non-compete agreements is in the public interest. *Walling,* 851 F.Supp. at 848.

As discussed *supra,* it appears from the submissions of the parties that defendant must have at least some confidential information, in the form of customer lists, profit margins and pricing schemes. This court is also wary of defendant's claim that she will have no occasion to divulge the information in the course of her employment at Peak. If she is working for a direct competitor in a similar area, her knowledge is bound to have a significant adverse impact on Lowry's business. The injury will be irreparable if Lowry loses customers it has spent years and significant resources obtaining. Moreover, defendant is not precluded from selling other computer products, and appears to be a well-qualified sales person.

As a result, this court will grant plaintiff's motion for preliminary injunction in this case.

Accordingly, this court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the motion by plaintiff, Lowry Computer Products, Inc., for preliminary injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant, Dadre L. Head, is **ENJOINED** from:

a) engaging in direct or indirect competition with plaintiff in the field of barcode data collection systems and sales of the related hardware, software and supplies for a period of one year;

b) accepting and/or continuing her employment with Peak Technologies, accepting and/or continuing employment with another employer or acting independently to directly or indirectly compete with plaintiff in the field of barcode data collection systems and sales of the related hardware, software and supplies for a period of one year;

c) competing, in any other way, for herself or as an employee or otherwise for or on behalf of any other entity, with plaintiff in the field of barcode data collection systems and sales of the related hardware, software and supplies for a period of one year;

d) using or disclosing any trade secret, confidential information or proprietary information of plaintiff.

**IT IS FURTHER ORDERED** that, pursuant to Fed.R.Civ.P. 65(c), plaintiff, Lowry Computer Products, Inc., is required to post a bond in the amount of Fifteen Thousand Dollars ($15,000.00) for the payment of such costs and damages as may be incurred or suffered by defendant if she is found to have been wrongfully enjoined.

**SO ORDERED.**