**HOWTING–ROBINSON ASSOCIATES, INC., a Michigan Corporation, Plaintiff,**

**v.**

**BRYAN CUSTOM PLASTICS, a division of United Screw and Bolt Corporation, an Ohio corporation, and Plastech Engineered Products, Inc., a Michigan corporation, jointly and severally, Defendants.**

No. Civ.A. 97–74470.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 9, 1999.

Norman Lippitt, P.C., Birmingham, MI, for plaintiff.

Lauren A. Rousseau, Dearborn, MI, Melvin J. Hollowell, Jr., Steven Ribiat, Co–Counsel, Detroit, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

TAYLOR, District Judge.

## I. BACKGROUND

On July 20, 1992, Howting Robinson ("HRA") and United Screw and Bolt ("US & B"), an automotive components manufacturer, entered a sales representation agreement. Pursuant to this agreement, HRA would solicit and obtain sales contracts for U.S. & B. In March, 1996, this agreement was renegotiated and, consequently, the parties entered a new agreement. Pursuant to this agreement, U.S. & B agreed to pay HRA a 3.25% commission on the sales of several components from April 1, 1996 until December 31, 2000. US & B further agreed to compensate HRA at the commission rate of 2.76% on the sales of these parts from January 1, 2001 until December 31, 2001. It was also agreed that U.S. & B could terminate the agreement for "dishonest or wrongful conduct ..... upon twelve months prior written notice" to HRA. Thus, even if HRA breached the Agreement, the agreement and HRA's right to receive commissions remained in effect for an additional twelve months beyond the date on which U.S. & B provided written notice of HRA's breach. The agreement further stated that the provisions were "binding upon the parties, their successors and assigns....". This agreement was executed on March 28, 1996.

In May, 1997, U.S. & B merged with Plastech Exterior Systems, Inc. ("PESI") and the management of PESI assumed control of the merged corporate entity. In June, 1997, PESI terminated the payment of any further commissions to HRA. HRA then commenced this action.

On February 2, 1998, this Court conducted a hearing regarding HRA's motion for summary judgment, in which HRA sought a judgment of liability against PESI for breach of the agreement. On February 27, 1998, this Court entered an Order Granting Plaintiff's Motion for Summary Judgment. In this Order it was adjudged that the agreement constituted an enforceable written contract between the parties, that HRA satisfactorily performed all of its obligations under the Agreement, and that PESI breached the Agreement. The Court further ordered that "the parties proceed in this action to determine the amount of damages to which Plaintiff is entitled as a result of Defendant's breach of contract." Plaintiff also claimed that Defendants intentionally breached the Michigan Sales Representative Act ("MSRA"). M.C.L. § 600.2961. This provision entitles Plaintiff to receive exemplary damages and attorney fees. Defendant, relying upon a choice-of-law provision in the March, 1996 contract, asserted that Ohio law governed all disputed matters relating to the contract and, consequently, that the MSRA is inapplicable in this matter.

This Court conducted a jury trial between February 9, 1999 and February 17, 1999 to determine HRA's alleged damages for breach of the contract. Upon agreement of the parties, the Court also bifurcated HRA's claim based upon the MSRA for a jury trial at a later date. Following the first trial, the jury awarded HRA contract damages in the amount of $4,400,000.00.

On the scheduled date of the second, bifurcated trial, the parties entered a stipulation allowing the Court to decide whether the MSRA applies in the instant matter. The stipulation provided that if the Court found the MSRA applicable, Plaintiff would receive an attorney fee in the amount of $200,000. Moreover, Plaintiff agreed to forego the statutorily mandated $100,000 in exemplary damages. However, if the Court should rule against applicability, Plaintiff was entitled to appeal the ruling.

The parties' written contract in this case provides that Ohio law governs the parties' business relationship. However, HRA seeks to recover under the Michigan Sales Representative Act, M.C.L. § 600.2961, which, in pertinent part, provides as follows:

(4) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay commissions when due.

(b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to two times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

(6) If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs. M.C.L. § 600.2961; M.S.A. § 27A.2961.

Significantly, the Act further provides:

(8) A provision in a contract between a principal and a sales representative purporting to waive any right under this section is void. M.C.L. § 600.2961; M.S.A. § 27A.2961.

Accordingly, this Court must determine whether the precept of comity requires the application of Michigan, rather than Ohio, sales representative laws. For the reasons developed more fully below, this Court is constrained to find that the Michigan Sales Representative Act is applicable in this matter.

## II. DISCUSSION

Federal courts sitting in diversity must apply the choice-of-law principles of the forum. *Klaxon Co. v. Stentor Electric Manufacturing Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, Michigan choice-of-law principles are applicable to this case.

The Michigan Supreme Court ruled that, when determining the applicable law, courts are required to balance the expectations of the parties with the interests of the States. *Chrysler Corp. v. Skyline Industrial Services, Inc.,* 448 Mich. 113, 528 N.W.2d 698 (1995). Accordingly, the Michigan Supreme Court has adopted the approach set forth in 1 Restatement of Conflict Laws §§ 187, 188 (1971) to resolve choice-of-law issues.

Section 187(1) permits the application of the parties "choice of law if the issue is one that parties could have resolved by an express contractual provision. However, there are two exceptions. The parties' choice of law will not be followed if (1) the chosen state has *no substantial relationship* to the parties or the transaction, or (2) there is no reasonable ba-

sis for choosing that state's law. Section 187(2)(a). Also, § 187(2)(b) bars the application of the chosen state's law when it 'be *contrary to the fundamental policy of a state'* which has a materially greater interest than the chosen state in the determination of the particular issue, and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

*Martino v. Cottman Transmission Systems, Inc.,* 218 Mich.App. 54, 554 N.W.2d 17 (1996).

Applying these standards to this case, this Court must find that Michigan has a materially greater interest than Ohio under the circumstances of this case, in the regulation of the sales representative relationship here in litigation.

### A. Ohio fails to meet the "Substantial Relationship" Test

 Under Section 188 of the 1 Restatement (Second) of Conflict Laws, the Court must look to the following factors to determine which State's law is applicable: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. In the instant matter, the negotiation and execution of the contract took place in Michigan. Moreover, the place of performance and location of the subject matter is also Michigan. Although U.S. & B was an Ohio corporation, the majority of their business, auto component sales, was with GM and Ford. As Ohio has a far less substantial relationship to the contract here in question than does the State of Michigan, it is the law of the latter state which must be applied.

### B. Ohio law is contrary to a "Fundamental Policy" of Michigan

 Having found that Michigan law is applicable to this matter, the Court must now determine whether application of Ohio law would abrogate a fundamental policy of Michigan law. "A fundamental policy may be embodied in a statute which (1) makes one or more kinds of contracts illegal or (2) which is designed to protect a person against the oppressive use of superior bargaining power." *Martino v. Cottman Transmission Systems, Inc., et al.,* 218 Mich.App. 54, 554 N.W.2d 17 (1996). The text of the MSRA indicates that the Michigan Legislature, in enacting a heavy penalty against violating principals, intended to ensure that sales representatives in Michigan are paid the full commissions to which they are entitled, especially when those commissions fall due after the termination of the employment relationship. *Walters v. Bloomfield Hills Furniture,* 228 Mich.App. 160, 577 N.W.2d 206 (1998). Ohio law contains no such protection or provision. In this case "the parties have selected, through their choice of law provision, a jurisdiction in which there is a substantial erosion of the quality of protection that the [MSRA] would otherwise provide." *Banek Incorporated v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357 (1993). Accordingly, the application of Ohio law, in this context, would be violative of a specific legislatively expressed public policy of the State of Michigan and therefore should not be enforced. The Michigan Legislature intended for its citizens to receive greater protections in the collection of their sales commissions, and this Court is constrained to agree. Accordingly, the MSRA is applicable to this matter.

Now therefore;

IT IS ORDERED that the Michigan Sales Representative Act is applicable and, in accordance with the parties agreement, Plaintiff shall be awarded attorney fees in lieu of exemplary damages.

IT IS FURTHER ORDERED that Defendant is entitled to appeal this ruling.

IT IS SO ORDERED.